**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHY WESLEY, individually and on behalf of all others similarly situated, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> *Defendant*. | Civil Action No. 20-cv-18629 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

      This class action lawsuit is premised on allegations that Defendant knew, but failed to disclose, that a temperature setting part in some of its gas and electronic ranges would eventually fail.  Presently before the Court is a motion by Defendant Samsung Electronics America, Inc. ("Samsung") to dismiss the Amended Complaint.  D.E. 16.  Plaintiffs filed a brief in opposition, D.E. 17, to which Defendant replied, D.E. 18.  The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons set forth below, Defendant's motion is **GRANTED in part** and **DENIED in part**.

---

[1] Defendant's brief in support of its motion (D.E. 16-1) will be referred to as "Def. Br."; Plaintiffs' opposition brief (D.E. 17) will be referred to as "Plfs. Opp."; and Defendant's reply (D.E. 18) will be referred to as "Def. Reply."

I.      **FACTUAL BACKGROUND**[2] **& PROCEDURAL HISTORY**

In this putative class action, Plaintiffs indicate that they purchased Samsung gas and electric ranges from various authorized resellers, such as Lowes and Home Depot.  Am. Compl. ¶¶ 22, 30, 37, 48, 57, 65, 74, 82, 90.  Plaintiffs then  began to experience various problems with the temperature settings of the ovens and stovetop components of the ranges.  The problems include that the oven would not maintain the set temperature, *id.* ¶ 26, the oven exceeded the set temperature, *id.* ¶ 34, and the range burners exceeded the set temperature, *id.* ¶ 61.  Four Plaintiffs attempted to repair their ranges, but only one repair was successful.  *Id.* ¶¶ 28, 42, 45, 95.  The remaining five Plaintiffs, for different reasons, did not attempt to repair their ranges.  Some continue to use the range despite the defect and others utilize a replacement appliance.  *Id.* ¶¶ 35, 46, 55, 63, 71, 80, 88.

Plaintiffs' ranges all contain an "oven temperature sensor bearing component model number DG32-00002B," which Plaintiffs allege is defective and is the cause of the various temperature problems.  *Id.* ¶ 109.  Plaintiffs contend that 87 Samsung gas and electric range models contain this defective piece (the "Class Ranges").  *Id.* ¶¶ 109, 131.  Plaintiffs further allege that Samsung knew of this defect, failed to disclose the defect, and continues to manufacture and sell ranges with the defective sensor.  *Id.* ¶¶ 121-30.  Had Plaintiffs know of the defect, they would not have purchased their ranges or would have paid a significantly lower price.  *Id.* ¶ 133.

Plaintiff Kathy Wesley filed this putative class action on December 9, 2020.  D.E. 1.  Plaintiffs filed the Amended Complaint on March 3, 2021, which includes eight new named

---

[2] The factual background is taken from Plaintiffs' Amended Complaint ("Am. Compl.").  D.E. 16.  When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Plaintiffs.[3]  D.E. 15.  On behalf of specific subclasses, Plaintiffs assert claims alleging violations of the New Jersey Consumer Fraud Act (Count I),[4] the California Consumers Legal Remedies Act (Count II), the California Unfair Competition Law (Count III), the Connecticut Unlawful Trade Practices Act (Count V), the Florida Deceptive and Unfair Trade Practices Act (Count VI), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VII), the New York Deceptive Acts and Practices Act (Count VIII), and the Texas Deceptive Trade Practices-Consumer Protection Act (Count IX).  The Court refers to these claims collectively as the state consumer protection act claims.  Plaintiffs also assert a breach of express warranty claim on behalf of the New Jersey and Florida subclasses (Count X), a breach of the implied warranty of merchantability of behalf of the state subclasses (Count XI), a Song-Beverly Consumer Warranty Act claim on behalf of the California subclass (Count IV), a violation of the Magnuson-Moss Warranty Act ("MMWA") on behalf of the entire class (Count XII), and a fraud by omission claim on behalf of the entire class and state subclasses (Count XIII).  D.E. 15.

Defendant filed its motion to dismiss on April 9, 2021, seeking to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 16.

## II.    LEGAL STANDARD

Rule 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face.

---

[3] Plaintiffs are Wesley (Florida), Alesia Charles (California), Joseph D'Andrea (New Jersey), Donald Davis (Texas), Stephanie Freeman-Muhammad (Illinois), Stephen Kalpin (Connecticut), Gary Owens (Georgia), Jo Peacock (Florida), and Maleia Porter (New York).  Am. Compl. ¶¶ 11-19.

[4] The numbering of the claims asserted in the Amended Complaint is not consistent.  As a result, the Court numbered the claims in the order in which they appear and refers to them in this manner.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002).  Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).  Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).  This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they

4

are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### III.   ANALYSIS

#### A.  Fraud Based Claims

##### 1.  Common Law Fraud (Count XIII)

Plaintiffs assert a fraud by omission claim, premised on Samsung's failure to disclose the alleged defect.  Am. Compl. ¶ 312.  Defendant seeks to dismiss the count on numerous grounds, including a lack of duty to disclose.  Def. Br. at 9-15.  An omission can amount to fraud if a party has a duty to disclose.  *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013).[5]

A duty to disclose may arise under several circumstances; two are relevant here.  Plaintiffs first allege that Samsung had a duty to disclose the true quality of the Class Ranges because Samsung had knowledge of the defect and such knowledge was only known to Samsung.  Plaintiffs next allege that Samsung had superior knowledge and access to relevant facts.  Am. Compl. ¶ 315. Numerous state laws, including in New Jersey, "recognize a duty to disclose where the defendant possesses exclusive or superior knowledge or actively conceals the omitted information."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *19 (D.N.J. May

---

[5] Plaintiffs assert their fraud claim under New Jersey, California, Connecticut, Florida, Georgia, Illinois, and Texas law.  Defendant states that although there may be differences in state law for the common law and statutory fraud claims, each state requires that for an omission-based claim, there must be a duty to disclose.  Def. Br. at 9.  Plaintiffs do not challenge this proposition.  Plfs. Opp. at 18.  Because the parties do not contend that there are any material differences between the multiple state laws on this issue, the Court applies New Jersey law.  *See Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 875 (D.N.J. 2020) (explaining that under New Jersey choice of law rules, if there is no conflict between the laws of the competing jurisdictions then "the substantive law of the forum state applies" (quoting *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *5 n.5 (D.N.J. Jan. 24, 2014))).

8, 2017) (citing to cases applying different state laws, including California, Florida, Connecticut, and Texas). Plaintiffs plead that Samsung knew of the defect because of negative Internet reviews and direct complaints. Am. Compl. ¶ 121. As for the Internet reviews, Plaintiffs include a number of reviews in the Amended Complaint and in an appendix to the pleading. *Id.* ¶ 123, *see also id.*, App. A. In the Amended Complaint, Plaintiffs highlight nine reviews that were posted before any Plaintiff purchased a range. *Id.* ¶ 123. The reviews were posted on Lowes.com and CompactAppliance.com. *Id.* ¶ 123 n.4. The remaining reviews in Appendix A, however, were largely posted after Plaintiffs purchased their ranges. *See id.*, App. A. The reviews that post-date Plaintiffs' purchases cannot demonstrate Samsung's pre-purchase knowledge of the defect. As for the reviews that preceded Plaintiffs' purchases, these reviews were posted on multiple publicly available websites. A handful of public complaints on the third-party websites are not sufficient to establish that Samsung had exclusive or superior knowledge of the alleged defect. *See, e.g.*, *Morales v. Kimberly-Clark Corp.*, No. 2020 WL 2766050, at *9 (S.D.N.Y. May 27, 2020) ("[W]ithout more, the mere existence of these online consumer complaints does not raise a reasonable, or even plausible, inference that Defendant intended to deceive consumers about the existence of a defect in its product."); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 909 (N.D. Cal. 2018) (concluding that "a handful of complaints" from customers to manufacturer "do not, by themselves, plausibly show that [manufacturer] had knowledge of the defects and concealed the defects from customers").

Plaintiffs also allege that customers made direct complaints to Samsung about the purported defect. *Id.* ¶ 121. Plaintiffs add that Samsung had "data from pre-release testing concerning the Defect," warranty claims data, and repair and service documentation from Samsung authorized repair technicians. *Id.* ¶ 125. Defendant counters that these allegations are too vague

to satisfy the Rule 9(b) heightened pleading standard for fraud.  Def. Br. at 15.  The Court agrees.

Again, Rule 9(b) imposes a heightened pleading requirement of factual particularity for fraud

claims.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d at 216.  Here, Plaintiffs do not

provide any further details to substantiate their allegations regarding Samsung's internal

knowledge.  For example, Plaintiffs do not explain what the pre-release data indicated, how many

warranty claims were submitted or repairs occurred, what models were allegedly experiencing

problems, or how any of this information put Samsung on notice of the alleged defect.  Plaintiffs

also allege that certified appliance technicians observed the sensor and control boards "failing at a

high rate."  Am. Compl. ¶ 118.  Plaintiffs, however, fail to allege that this information was ever

communicated to Samsung.  *See Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 614

(D.N.J. 2014) (concluding that the plaintiffs satisfied Rule 9(b) with the allegation "that Samsung

employs a procedure whereby authorized service technicians report their calls to Samsung," which

suggested that individuals at Samsung had knowledge).

Finally, Plaintiffs allege that Samsung had a section on its website entitled "Samsung oven

temperature issues," which "makes light of the problem" and suggests that issues are caused by

user error.  Am. Compl. ¶¶ 122, 128.  Plaintiffs further allege that this page is evidence of

Samsung's knowledge of the defect.  *Id.* ¶ 122.  Without additional allegations, it is not a

reasonable inference that because Samsung knew there were oven temperature issues, Samsung

knew there was a sensor defect.

Plaintiffs argue that the Court must consider these allegations together as to Samsung's

knowledge.  But even viewed as a whole, Plaintiffs fail to plausibly plead that Samsung had

superior knowledge of the alleged defect.  The customer complaints involve problems on multiple

models that occurred from the purchase date to more than a year after purchase.  Given the wide

variety of problems, as evidenced from the Internet complaints,[6] the Court cannot reasonably infer that Samsung knew or should have known of a single defect in more than 87 models.  For example, Plaintiffs do not plausibly allege that the defective sensor was the only potential cause of the myriad of problems.  Consequently, even viewing the allegations as a whole, Plaintiffs fail to establish that Samsung had superior knowledge about the alleged defect.

The Court is aware that other courts have used similar allegations (*i.e.,* customer complaints, pre-release testing, warranty data, and repair technician reports) to collectively infer a defendant's knowledge of a defect.  Plaintiffs' allegations, however, fall short of the allegations in those cases.  *See, e.g.*, *In re MacBook Keyboard Litig.*, No. 18-2813, 2019 WL 1765817, at *6 (N.D. Cal. Apr. 22, 2019) (concluding that allegations including that Apple performed engineering testing prior to release, which Apple conceded, that Apple's patent applications reflected knowledge of defect and customer complaints on numerous forums including apple.com were sufficient to allege knowledge); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (concluding that multiple pages of customer complaints about a speedometer malfunction, several of which reference "hundreds of similar complaints," were sufficient to state a claim that GM had exclusive knowledge of alleged speedometer defect).  As discussed, Plaintiffs' allegations about direct customer complaints, pre-release testing, and repair reports are not plausibly pled to

---

[6] The reviews contained in the factual allegations of the Amend Complaint are that the range settings were too hot presumably from the purchase date; that the range "temperature is off;" that after a 1.5 years after purchase the oven heat would not go above 285 degrees; the oven temperature cycles between thirty degrees lower than the set temperature and thirty degrees higher; the burners do not stay lit; the oven temperature was not even, the user had to continuously adjust the stove top burners, and after a year the broiler would not turn off; after eight months the oven temperature would get too hot and after a repair items took too long to cook; the burners were too hot at some point after purchase; and oven temperature was 100 degrees lower than set temperature.  Am. Compl. ¶ 123.

give rise to the reasonable inference that Plaintiff's ask the Court to apply.  Therefore, Plaintiffs fail to plead adequately that Samsung had a duty to disclose based on its knowledge of the defect.

Plaintiffs also plead that Samsung had a duty to disclose that arises from Samsung's "many partial representations about the qualities and reliability of its ranges."  Am. Compl. ¶ 315. Specifically, Plaintiffs allege that Samsung made several partial disclosures, including that its appliances are safe, Am. Compl. ¶ 103; that its ranges "cook food evenly and save time" while "tout[ing] its ranges' cooking precision and flexibility," *id.* ¶ 104; and that users can control temperature settings of its ranges, *id.* ¶ 105.  Plaintiffs continue that these partial representations were misleading, deceptive, and incomplete because Samsung failed disclose information about the actual reliability of the Class Ranges.  *Id.*  "Where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2015 WL 1270958, at *8 (D.N.J. Mar. 18, 2015); *see also Schechter v. Hyundai Motor Am.*, No. 18-13634, 2020 WL 1528038, at *16 (D.N.J. Mar. 31, 2020) ("In addition, a plaintiff can assert an omission-based negligent misrepresentation claim in connection with a concealed defect 'when a [manufacturer] has made a partial disclosure.'" (quoting *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20).  But as discussed, Plaintiffs fail to sufficiently allege that Defendant knew of the alleged defect when any Plaintiff purchased his or her range.  Without this knowledge, Defendant could not have corrected any partial disclosure even if the identified marketing materials amount to a partial disclosure.

In addition, Plaintiffs do not specifically identify the marketing materials that contained these statements or plead which Plaintiff relied on which partial representation when purchasing

their ranges. Instead, Plaintiffs generally allege that Plaintiffs "reviewed marketing materials" prior to his or her purchase. *See, e.g.*, Am. Compl. ¶ 38. The most detailed allegation is that Plaintiff Kalpin indicates that he "reviewed Samsung marketing materials . . . indicating the Class Range was of good quality and highlighting the range's features." *Id.* ¶ 31. But even as to this allegation, Plaintiffs fail to identify whether any of the marketing materials contained the partial disclosures. These general allegations cannot withstand a motion to dismiss. *See Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 WL 6607148, at *16 (D.N.J. Dec. 5, 2019) ("The Court finds that Plaintiffs sufficiently allege the general content of the misrepresentation, who made the misrepresentation, where it was made, and when Plaintiffs were exposed to that misrepresentation."); *see also Garcia v. Gen. Motors LLC*, No. 18-1313, 2018 WL 6460196, at *18 (E.D. Cal. Dec. 10, 2018) (concluding there was no duty to disclose where "Plaintiffs failed to plead with sufficient particularity what representations GM made to them, [and] that Plaintiffs actually relied upon in purchasing the vehicle"). Therefore, Plaintiffs do not plead sufficient facts demonstrating that Samsung had a duty to disclose the defect due to a partial disclosure.

In sum, Plaintiffs fail to plead plausibly an actionable omission-based fraud claim. Count XII is dismissed.

### 2. Consumer Protection Act Claims (Counts I-III, V-IX)

Plaintiffs assert state statutory consumer protection act claims for New Jersey, California, Connecticut, Florida, Illinois, New York, and Texas. These claims are all premised on the same overarching conduct as Plaintiffs' common law fraud claim – Samsung's alleged failure to disclose the defect to Plaintiffs before their purchases. *See* Am Compl. ¶ 184. Defendant therefore seeks to dismiss the state consumer protection act claims on the same grounds as the omission-based fraud claim. Def. Br. at 9.

As noted, the crux of Plaintiffs' claims is the failure to disclose.  *See id.* ¶ 185 (alleging that by continuing to sell the defective ranges "without full and fair disclosure of the defect . . . is part of a common and uniform course of wrongful conduct); *id.* ¶¶ 186-87 (further addressing Samsung's failure to disclose the defect).  Plaintiffs, however, address more than Samsung's failure to disclose through these claims.  Plaintiffs also allege that Samsung failed to exercise adequate quality control before placing the Class Ranges on the market, sold failure prone ranges, and directed ineffective repairs.  Am. Compl. ¶ 184.  But the repairs were allegedly ineffective because of the purportedly undisclosed defect.  *See id.* ¶ 134 (alleging that "Samsung instead attempts ineffective repairs or advises people with failed ranges to replace defective components with defective components").  And although Plaintiffs plead that Samsung failed to exercise adequate quality control, they do so in conclusory fashion.  As a result, this aspect of Plaintiffs' state consumer protection act claims is dismissed.  *See Iqbal*, 556 U.S. at 678 (explaining that in deciding a Rule 12(b)(6) motion to dismiss, a court need not credit conclusory statements couched as factual allegations).

As a result, the Court views Plaintiffs' state consumer protection act claims as being limited to Samsung's failure to disclose the alleged defect.  For the reasons stated in the prior section, Plaintiffs fail to plead adequately that Samsung had a duty to disclose the purported defect.  Therefore, each of their state consumer protection act claims are dismissed.

### B.  Breach of Warranty Claims

#### 1.  Express Warranty Claims (Count X)

In Count X, Plaintiffs assert a breach of warranty claim on behalf of the New Jersey and Florida subclasses.  Am. Compl. ¶¶ 275-86.  Defendant argues that the Florida subclass should be dismissed as to the express warranty claim because Plaintiffs fail to plead reliance.  Def. Br. at 22-

23.  Under Florida law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Fla. Stat. § 672.313(1)(a).  Whether justifiable reliance is an element for a breach of express warranty claim "is not entirely settled" under Florida law.  *Byrnes v. Small*, 142 F. Supp. 3d 1262, 1274 n.9 (M.D. Fla. 2015).  The weight of authority, however, suggests that reliance is required.  *Byrnes*, 142 F. Supp. 3d at 1274 n.9 ("Nevertheless, ample law suggests that justifiable reliance is in fact a required element of a breach of express warranty claim."); *see also Aprigliano v. Am. Honda Motor Co., Inc.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("Statements made in promotional materials, advertisements, and brochures may be sufficient to create an express warranty if the buyer relies on those statements in making his purchase."); *Wyse v. Gerard Roof Prods., LLC*, No. 19-121, 2020 WL 1318348, at *2 (N.D. Fla. 2020) (dismissing breach of warranty claim because of lack of reliance).

Here, Plaintiffs allege that Samsung provided a limited warranty expressly warranting that it "would repair any defects in materials or workmanship free of charge during the applicable warranty periods."  Am. Compl. ¶ 280.  Plaintiffs further allege that this warranty "formed the basis of the bargain."  *Id.* ¶ 282.  But Plaintiffs do not allege where the warranty appeared, the terms of the warranty, how Peacock or Wesley learned of the warranty, or any other details demonstrating that Plaintiffs were aware of the warranty prior to their purchase.  As a result, Plaintiffs fail to adequately plead reliance for their breach of express warranty claim for the Florida subclass, and the claim is dismissed as to the Florida subclass.

With respect to the New Jersey subclass, Defendant contends that the breach of warranty claim must be dismissed because Plaintiffs do not allege that Samsung was provided with required notice.  Def. Br. at 23.  New Jersey adopted the Uniform Commercial Code's notice requirement

for an express warranty claim in N.J. Stat. Ann. § 12A:2-607(3)(a).  The notice requirement provides that after a purchase, "the buyer must within reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  N.J. Stat. Ann. § 12A:2-607(3)(a).  Courts in this district have predicted that "the New Jersey Supreme Court would not require notice under section 2-607(3)(a) in a case against a remote manufacturer who was not the immediate seller of a defective product."[7] *Strzakowlski v. Gen. Motors Corp.*, No. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *13 ("Pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller.").   Here, D'Andrea purchased his Class Range at Sears rather than directly from Samsung.  Am. Compl. ¶ 74.  Accordingly, the UCC notice requirement does not appear to apply.

Moreover, Plaintiffs allege that after his range failed, D'Andrea contacted Samsung, "which declined to repair the class range."  Am. Compl. ¶ 79.  Plaintiffs' Complaint may also constitute notice.  *Strzakowlski v. Gen. Motors Corp.*, No. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005).  Accordingly, even if the Court were to accept Samsung's argument that it is entitled to notice, Plaintiffs sufficiently plead that D'Andrea did provide sufficient notice.

Defendant's motion is denied as to breach of express warranty claim concerning the New Jersey subclass.

---

[7] In its reply brief, Samsung maintains that "the suggestions that Samsung is 'remote' contradicts Plaintiffs' claim that they were third-party beneficiaries for privity purposes." Def. Reply at 10. Plaintiffs' allegation as to their purported third-party beneficiary status appears in their implied warranty claim and references contracts between Samsung and its resellers.  Am. Compl. ¶ 294. In their express warranty claim, however, Plaintiffs appear to allege that Samsung provided a warranty directly to D'Andrea.

## 2.   Implied Warranty of Merchantability (Count XI)

Next, Defendant seeks to dismiss Plaintiffs' implied warranty claim for the California, Texas, Connecticut, Georgia, and New York subclasses because the alleged injuries did not occur within the implied warranty time-period.  Def. Br. at 18-19.  Plaintiffs counter that they sufficiently allege that Samsung's time limit on the implied warranty of merchantability is unconscionable. Plfs. Opp. at 6.

"[C]ourts may refuse to enforce contracts, or discrete contract provisions, that are unconscionable." *Rodriguez v. Raymours Furniture Co., Inc.*, 138 A.3d 528, 541 (N.J. 2016).[8]  To determine whether a contract is unconscionable, a court evaluates both procedural and substantive unconscionability.  *Id.*  Procedural unconscionability "refers to unfairness in the formation of the contract, and may be shown by a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."  *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 595 (D.N.J. 2016) (quoting M*uhammad v. Cty. Bank of Rehoboth Beach*, 912 A.2d 88, 96 (N.J. 2006)) (internal quotations omitted).  Substantive unconscionability occurs when a contract term is "excessively disproportionate and involves an exchange of obligations so one-sided as to shock the court's conscience."  *Id.* (quoting *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (N.J. 2006)) (internal quotations omitted).  Finally, deciding whether a contract is unconscionable is a fact-specific inquiry.  *Delta Funding Corp.*, 912 A.2d at 110.  Courts generally

---

[8] Although Defendant does not seek to dismiss the implied warranty claim as to the New Jersey sub-class, Plaintiffs use New Jersey law to argue unconscionability.  Defendant does not challenge Plaintiffs' use of New Jersey law.  As a result, the Court will apply New Jersey law to decide this aspect of Defendant's motion to dismiss.

apply "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." *Id.*

Plaintiffs contend that they plead substantive unconscionability because Defendant knew of the defect and "consumers lacked the ability to detect the defect given its latent nature." Plfs. Opp. at 7. "[A] manufacturer's knowledge that a part may ultimately fail does not, alone, make a time . . . limitation unconscionable." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 256 (D.N.J. 2020) (quoting *Merkin v. Honda N. Am., Inc.*, No. 17-3625, 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017)).   Rather, a plaintiff must plead additional facts to demonstrate unconscionability. *See, e.g.*, *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *9 n.6 (D.N.J. July 21, 2020) (finding that allegations of knowledge that part would fail along with allegations regarding a gross disparity of bargaining power were sufficient to allege unconscionability); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *12 (finding that the plaintiffs sufficiently alleged unconscionability based, in part, on allegations that the defendant "was well aware of the defect" and knew of the defect at the time of sale); *Skeen v. BMW of N.A., LLC*, No. 13-1531, 2014 WL 283628, at *13 (D.N.J. Jan. 24, 2014) (concluding that allegations that manufacturer knew engine component would fail, manipulated the warranty terms to avoid paying for repair, and unfairly took advantage of its disparate bargaining power were sufficient to allege unconscionability).

As discussed, Plaintiffs fail to adequately plead that Defendant knew of the purported Class Range defect at the time of sale.   As a result, Plaintiffs' unconscionability argument fails. Plaintiffs' implied warranty claims for the California, Texas, Connecticut, Georgia, and New York subclasses, therefore, are dismissed.

Defendant next argues that the implied warranty claim should be dismissed as to the remaining subclasses because D'Andrea (New Jersey), Freeman-Muhammad (Illinois), and Wesley (Florida) fail to allege that their ranges were unmerchantable. Def. Br. at 19-21. "The implied warranty of merchantability does not 'impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality.'" *Lieberson v. Johnson & Johnson Consumer, Cos., Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (quoting *Hughes v. Panasonic*, No. 10-846, 2011 WL 2976839, at *22 (D.N.J. July 21, 2011)). Thus, for the implied warranty to be breached, "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Id.* (quoting *Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *16 (D.N.J. Sept. 11, 2009)). In other words, the product "should be of the general kind described and reasonably fit for the general purpose for which it should have been sold." *Id.* (quoting *Ferrari v. Am. Honda Motor Co., Inc.*, No. A-1532-07T21532-07T2, 2009 WL 211702, at *3 (N.J. App. Div. Jan. 30, 2009)). Here, D'Andrea alleges that he does not use his Class Range because of the defect and that he purchased a toaster oven as a replacement. Am. Compl. ¶ 80. Accordingly, Plaintiffs sufficiently plead unmerchantability as to D'Andrea.

It appears, however, that Freeman-Muhammad and Wesley continue to use their ranges, at least to some extent, despite the defect. *See* Am. Compl. ¶ 46 (alleging that the oven does not maintain a set temperature but not indicating that the oven is unusable); ¶ 72 (alleging that Freeman-Muhammad purchased an air fryer "that she uses more frequently as a temporary replacement" because her Class Range does not maintain its set temperature). Samsung contends that because they continue to use their ranges, these ranges are not unmerchantable. Def. Br. at 20. The Court disagrees.

Plaintiffs' allegations are materially different than the cases that Defendant cites to support its argument.  In Defendant's cases the alleged problem was incidental to the product's ordinary purpose.  *See, e.g.*, *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 913 (E.D. Cal. 2018) (addressing merchantability of stove with alleged problem with the self-cleaning feature); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 967, 979 (C.D. Cal. 2014) (concluding that car was still fit to drive despite defect in optional, advanced safety features available for certain Prius vehicles).  Here, Plaintiffs' allegations about the defect impact the primary use of the Class Ranges.  Freeman-Muhammad and Wesley plead that they purchased their Class Ranges to cook, and now allege that they cannot perform this task sufficiently because food does not cook in a reasonable amount of time or is scorched.  Am. Compl. ¶ 117.  Further, Freeman-Muhammad does not allow her son or mother to operate the range out of safety concerns. *Id.* ¶ 71.  These allegations are sufficient to establish that the Class Ranges do not perform as reasonably intended.  *See, e.g.*, *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183-84 (S.D. Fla. 2019) (rejecting argument that because the plaintiff continued to drive the car at issue it was not unmerchantable where car began to shake when it reached 70 mph and if problem was left unaddressed component could deteriorate).  Accordingly, Defendant's argument that Plaintiffs fail to allege unmerchantability is rejected.

Finally, Samsung alleges that the implied warranty claim fails as to the Florida and Illinois subclasses due to lack of privity.  Def. Br. at 21.  Generally, under Florida law, a party "cannot recover economic losses for breach of an implied warranty in the absence of privity."  *Weiss*, 418 F. Supp. 3d at 1182.  Nevertheless, some courts have concluded that there is a third-party beneficiary exception where a plaintiff who purchases the product from an authorized dealer can demonstrate that she was intended to benefit from an implied warranty.  *Id.* at 1183.  Other courts

have squarely rejected this argument.  *See Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1109 (S.D. Fla. 2019) (explaining that "[t]ime and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant").  Neither Plaintiffs nor Defendant address this split in authority in any substance.  The Court finds the cases permitting the third-party beneficiary exception to be more persuasive.  Because the Amended Complaint includes sufficient allegations through which the Court could conclude that the Florida Plaintiffs are third-party beneficiaries (Am. Compl. ¶ 294), the Court denies Defendant's motion to dismiss on these grounds with respect to the Florida subclass.

Turning to the Illinois subclass, Illinois law also requires privity for an implied warranty claim.  *See Zaro v. Maserati N. Am., Inc.*, No. 07-3565, 2007 WL 4335431, at *2 (N.D. Ill. Dec. 6, 2007) ("The Illinois Supreme Court has held that a claim for breach of an implied warranty under Illinois law against a manufacturer for economic damages can only be brought against his immediate seller.").  Plaintiffs rely on an exception to the privity requirement that arises when a plaintiff "relies on written labels or advertisements of a manufacturer."  *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016).  The court in *Rust-Oleum* appears to have been discussing an exception under California, not Illinois, law.  *Id.* (citing to cases from the Ninth Circuit and Northern District of California when discussing the exception).  Moreover, even if the Court were to conclude that such an exception exists under Illinois law, it is not plausibly pled.  While Freeman-Muhammad pleads that she reviewed Samsung marketing materials before purchasing her range, she does not allege what was in these marketing materials or that she relied on any representations in the materials when deciding to purchase her range.  Plaintiffs' implied warranty claim is dismissed as to the Illinois subclass.

Defendant's motion is denied with respect to the implied warranty claim for the New Jersey and Florida subclasses.  Defendant's motion, however, is granted as to the remaining subclasses.

### 3. Song-Beverly Act Claim (Count IV)

Defendant contends that Plaintiffs' Song-Beverly Act claim should be dismissed because Charles' failed to notify Samsung of the purported defect and provide it with an opportunity to repair the range.[9]  Def. Br. at 21.  In making this argument, Defendant relies on Cal. Civ. Code § 1793.2.  *Id.*  Plaintiffs counter that the notice requirement of Cal. Civ. Code § 1793.2 only applies to express warranties.  Plfs. Opp. at 11.  The Court agrees.  *See Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 947 n.55 (C.D. Cal. 2012) (explaining that Cal. Civ. Code § 1793.2 only applies to express warranties).  Here, Plaintiffs assert an implied warranty claim under the Song-Beverly Act on behalf of the California subclass.  Am. Compl. ¶¶ 203-06.  Thus, Defendant's motion is denied on these grounds.

### 4. Magnuson-Moss Warranty Act Claim (Count XII)

Next, Defendant maintains that the MMWA claim must be dismissed because Plaintiffs fail to meet the numerosity requirement.  Def. Br. at 23-24.  "The MMWA provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'"  *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017) (quoting 15 U.S.C. § 2310(d)(1)).  The MMWA has a jurisdictional requirement that provides as follows:

---

[9] The Song-Beverly Act is a California statute that "is a pro-consumer legislation intended to expand the protections of the implied warranty of merchantability beyond that in the Uniform Commercial Code."  *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 384 (D.N.J. 2014).

> No claim shall be cognizable in a suit brought under paragraph
> (1)(B) of this subsection . . . if the action is brought as a class action,
> and the number of named plaintiffs is less than one hundred

15 U.S.C. § 2310(d)(3)(C). Subsection (d)(1)(B) permits consumers to bring a suit for damages under the MMWA in a federal district court.[10] 15 U.S.C. § 2310(d)(1)(B).

Plaintiffs do not meet the jurisdictional requirements to assert their MMWA claim. *See Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 885 (D.N.J. 2020). Plaintiffs nevertheless argue that their MMWA claim should not dismissed because this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") at 28 U.S.C. § 1332(d). Plfs. Opp. at 14. This issue has not been addressed by the Third Circuit, and there is a split of authority within the district. Many courts within the district have determined that if there is a proper basis for jurisdiction other than the MMWA, an MMWA claim may proceed even if the plaintiffs do not otherwise satisfy the MMWA jurisdictional requirements. *See, e.g., Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 n.4 (D.N.J. 2011) ("However, Plaintiffs have properly identified diversity jurisdiction pursuant to 28 U.S.C. § 1332(d) as supporting jurisdiction in this case, meaning that Court need not rely on jurisdiction under the MMWA."). At least one court in this district, however, recently concluded that a plaintiff "may not use CAFA as a means to evade the explicit jurisdictional requirements of the MMWA." *Powell*, 502 F. Supp. 3d at 885 (citing *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020)).

This Court finds *Powell* persuasive. Subsection (d)(1)(B) governs MMWA claims in federal courts and (d)(3) "governs . . . the corresponding requirements for such claims brought in federal court." *Powell*, 502 F. Supp. 3d at 885. Subsection (d)(3) explicitly provides that for an

---

[10] Subsection (d)(1)(A) permits a consumer to bring an MMWA claim "in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. § 2310(d)(1)(A). The requirements of (d)(3) do not apply to claims brought in state court or the District of Columbia.

MMWA class action, "[n]o claim shall be cognizable" if "the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3)(C).  Allowing Plaintiffs to proceed with the MMWA through CAFA jurisdiction would render subsection (B) requirements superfluous.  *Floyd*, 966 F.3d at 1035.  And this Court cannot disregard the Congressional requirements to sustain a cognizable claim.  Therefore, the Court also dismisses Plaintiffs' MMWA claim.

### C.  Equitable Relief

Finally, Defendant argues that Plaintiffs' claims for equitable relief must be dismissed because Plaintiffs do not demonstrate that an adequate legal remedy is unavailable.  Def. Br. at 24-25.  Federal Rule of Civil Procedure 8 provides that in a pleading, a party may demand different types of relief, including relief in the alternative.  Fed. R. Civ. P. 8(a)(3).  Accordingly, Plaintiffs are entitled to seek multiple forms of relief, including equitable relief.  Thus, it is premature to dismiss a claim for relief at the pleading stage.  *See Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *16 (D.N.J. Sept. 30, 2015) (explaining that in deciding a Rule 12(b)(6) motion and motion to strike, "it [was] premature to resolve factual and legal issues regarding the availability of consequential damages and injunctive and equitable relief").  Defendant's motion is denied on these grounds.

### IV.   CONCLUSION

Defendant's motion to dismiss (D.E. 16) is **GRANTED in part** and **DENIED in part**.  Defendant's motion is granted as to the common law fraud claim, the state consumer protection act claims, and the MMWA claim.  Defendant's motion is also granted as to the Florida subclass for Plaintiffs' breach of express warranty claim and as to the California, Texas, Connecticut, Georgia, Illinois, and New York subclasses for the implied warranty claim.  These claims are dismissed without prejudice.  Defendant's motion is otherwise denied.

Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein.  If Plaintiffs do not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice.   An appropriate Order accompanies this Opinion.

Dated: December 3, 2021

John Michael Vazquez, U.S.D.J.