**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KATHY WESLEY, ALESIA CHARLES, JOSEPH D'ANDREA, and JO PEACOCK, individually and on behalf of all others similarly situated,

          *Plaintiffs*,

   v.

SAMSUNG ELECTRONICS AMERICA, INC.,

          *Defendant*.

Civil Action No. 20-18629

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This class action lawsuit alleges that Defendant knew, but failed to disclose, that an oven temperature sensor in some of its gas and electronic ranges was defective. Currently pending before the Court is a motion by Defendant Samsung Electronics America Inc. ("Samsung") to dismiss Plaintiffs' Second Amended Complaint or, in the alternative, to Strike the Class Allegations, D.E. 57, and a cross-motion by Plaintiffs for leave to amend, D.E. 59. The Court reviewed the submissions in support and in opposition,[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below,

---

[1] Plaintiffs' Second Amended Complaint, D.E. 52, will be referred to as "SAC"; Defendant's brief in support of its motion to dismiss or, in the alternative, to strike the class allegations, D.E. 57-1, will be referred to as "Def. Br."; Plaintiffs' brief in opposition and in support of their cross-motion for leave to file a Third Amended Complaint ("TAC"), D.E. 58-1, will be referred to as "Pl. Opp. Br."; Defendant's reply brief and opposition to Plaintiffs' cross-motion, D.E. 62, will be referred to as "Def. Reply"; and Plaintiffs' reply brief, D.E. 64, will be referred to as "Pl. Reply."

Defendant's motion to dismiss and strike is **GRANTED in part** and **DENIED in part**, and Plaintiffs' cross-motion for leave to amend is **DENIED**.[2]

## I.    FACTUAL BACKGROUND[3]

In this putative class action, Plaintiffs allege that they purchased Samsung gas and electric ranges from various authorized resellers, such as BestBuy and Sears. SAC ¶¶ 16, 25, 37, 47. Plaintiffs reviewed Samsung marketing materials and were aware that their ranges were covered by a Samsung warranty, which was included in the user manual that came with the range. *Id.* ¶¶ 17, 18, 26, 27, 38, 39, 48, 49.   This warranty covers manufacturing defects in materials and workmanship for one year. *Id.* ¶¶ 18, 27, 39, 49.   After purchasing the ranges, Plaintiffs began to experience problems with the temperature settings of the ovens and/or stovetop components of the ranges, as the ovens and/or stovetops would not maintain the set temperature. *Id.* ¶¶ 20, 29, 32, 41, 51.   Plaintiffs attempted to contact Samsung to have the ranges repaired, but the repairs were either unsuccessful or Plaintiffs were unable to obtain repair services. *Id.* ¶¶ 21, 22, 30, 33, 42, 52.   Plaintiff Peacock and Plaintiff D'Andrea have since used replacement appliances. *Id.* ¶¶ 44, 53.

Plaintiffs' ranges all contain an "oven temperature sensor bearing component model number DG32-00002B," which Plaintiffs allege is defective and is the cause of the various temperature problems. *Id.* ¶ 67.   Plaintiffs contend that at least 87 Samsung gas and electric range

---

[2] To be clear, the Court is denying the *pending* cross-motion to amend.   The Court is nevertheless granting Plaintiffs leave to amend to cure the deficiencies noted herein.   And if Plaintiffs file an amended pleading, they may add the new Plaintiffs sought to be joined in the pending cross-motion.

[3] The factual background is taken from Plaintiffs' SAC, D.E. 52.   When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

models contain (or contained) this defective sensor (the "Class Ranges"). *Id.* ¶ 89. Plaintiffs explain that the temperature sensor measures the internal oven temperature, and as the temperature rises and falls, the sensor varies the amount of resistance in the electrical circuits linked in the control board. *Id.* ¶ 69. Based on the changes in resistance, the control board turns the heat supply on or off to maintain the set temperature. *Id.* ¶¶ 69–70. Plaintiffs allege that when the defect manifests, the sensor fails to correctly regulate resistance in the circuits of the Class Ranges, and the variations in resistance can cause delays in signal transmission, degrade the conducting materials, and can lead to circuit failure over time. *Id.* ¶ 71. Because the control board regulates temperatures in both the oven and range burners, the defect can allegedly result in dangerously high burner temperatures or a failure to cook food in a reasonable amount of time. *Id.* ¶¶ 71, 72, 75. Plaintiffs further allege that Samsung knew of, and failed to disclose the defect, and continues to manufacture and sell ranges with the defective sensor. *Id.* ¶¶ 79–85. Had Plaintiffs known of the defect, they would not have purchased their ranges or would have paid a significantly lower price. *Id.* ¶ 91.

## II.   PROCEDURAL HISTORY

Plaintiffs filed this putative class action on December 9, 2020, D.E. 1, and filed its First Amended Complaint ("FAC") on March 3, 2021. D.E. 15. Samsung moved to dismiss, D.E. 16, and on December 3, 2021, the Court granted the motion in part and afforded Plaintiffs 30 days to file an amended complaint. D.E. 44, D.E. 45. Based on an amended scheduling order, D.E. 47, the due date for the SAC was extended to April 5, 2022. On April 4, 2022, the parties submitted a joint stipulation indicating that Plaintiffs intended to file a motion for leave to amend their complaint to add new plaintiffs and requesting that the Court extend Plaintiffs' SAC deadline until

after Plaintiffs could file, and the Court could decide, Plaintiffs' planned motion for leave to amend.  D.E. 49.  The Court did not approve the stipulation.  D.E. 50.

On April 5, 2022, Plaintiffs filed the SAC.  D.E. 52.  The SAC includes four Plaintiffs who bring allegations individually and on behalf of all others similarly situated: Kathy Wesley (Florida), Jo Peacock (Florida), Alesia Charles (California), and Joseph D'Andrea (New Jersey).  On April 22, 2022, the Court held a conference and directed the parties to simultaneously brief Samsung's anticipated motion to dismiss the SAC and Plaintiffs' cross-motion for leave to amend the SAC to add new plaintiffs.  D.E. 54.  On May 16, 2022, Samsung moved to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, moved to strike the class allegations.  D.E. 57, 57-1.  Plaintiffs filed their opposition and cross-motion for leave to file a Third Amended Complaint ("TAC") on June 21, 2022.  D.E. 58, 58-1, 59.  On July 11, 2022, Samsung replied to Plaintiffs' opposition and opposed Plaintiffs' cross-motion, D.E. 62, and Plaintiffs replied on July 18, 2022, D.E. 64.

The SAC asserts claims for breach of express warranty and implied warranty of merchantability on behalf of the New Jersey and Florida subclasses (Count I and Count II, respectively), and violations of the Song-Beverly Consumer Warranty Act claim and a California Consumers Legal Remedies Act claim on behalf of the California subclasses (Count III and Count IV, respectively).  D.E. 52.  The SAC omits the fraud claim, MMWA claim, most of the state consumer protection claims, and some of the express and implied warranty claims that were raised in the FAC.[4]

---

[4] These claims are now dismissed with prejudice.  *See* D.E. 45 ("Plaintiffs have thirty days to file an amended complaint that cures the deficiencies noted herein," or "the claims dismissed herein will be dismissed with prejudice.").

4

### III.    LAW AND ANALYSIS

Samsung first argues that Plaintiffs' claims should be dismissed because they have not plausibly alleged a "defect" in their ranges.  Samsung then asserts that Plaintiffs' amended allegations do not support an express warranty claim or an implied warranty claim.  Next, Samsung contends that Plaintiffs' SAC fails to cure the Song-Beverly Act claim and California Unfair Competition Law ("UCL") claim.  Finally, Samsung argues that even assuming Plaintiffs could state a viable claim, the class allegations should be stricken because they fail to plausibly allege a common defect, precluding certification.  Plaintiffs seek leave to amend to file a TAC to add four additional Plaintiffs who propose to assert breach of express and implied warranty claims under Illinois, Pennsylvania, Virginia, and Washington law.  The Court first examines the Rule 12(b)(6) motion to dismiss arguments before addressing the Rule 23(d)(1)(D) motion to strike class allegations.  The Court then addresses Plaintiffs' cross-motion to file a TAC.

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of

truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true[,]" and give the plaintiff the benefit of all reasonable inferences drawn therefrom.  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### A.  Pleading of Alleged Defect

Samsung argues that each of Plaintiffs' claims must be dismissed because Plaintiffs do not adequately allege a defect.  According to Samsung, Plaintiffs only allege one "vague symptom" —that their ranges do not maintain a set temperature—but they "fail to plausibly allege what the defect is or how it caused an actionable problem in *their* ranges." Def. Br. at 6.

The SAC names the defective component and the effects of the defect but fails to allege specifically what is defective about the part.  The alleged defective component is the "oven temperature sensor bearing the component model number DG32-00002B[.]"  SAC ¶ 1.  The SAC continues that "a latent defect[5] in the oven temperature sensor" causes the ranges' "control boards to fail," which in turn causes the ranges' "oven and burner temperatures to deviate from the user-selected temperature settings[.]"  *Id.* ¶ 2.  The temperature fluctuations can result in cook times being "greatly extended" or in temperatures being much higher than those chosen.  *Id.* ¶ 3.

However, other factual allegations are ambiguous as to the actual defect.  The range's igniter was repaired for Plaintiff Charles.  *Id.* ¶ 22.  For Plaintiff Wesley, a technician replaced her range's control board and, later, the temperature sensors.  *Id.* ¶ 30, 33.  The SAC continues that

---

[5] Elsewhere, the SAC similarly alleges in conclusory fashion that "the materials and workmanship of the DG32-00002B sensor are defective."  *Id.* ¶ 67.

certain unnamed appliance technicians indicated (at unknown times) that the cause of the temperature problems was attributable to both the temperature sensors and control boards. *Id.* ¶ 76. And the SAC cites to online consumer complaints that attribute the problems to other causes: "the controller board and the element[,]" "the heating element[,]" as well as the "electrical clock[.]" *Id.* at ¶ 81.

The SAC details the numerous components responsible for measuring and regulating oven temperature: the sensor, the control board, and the heat supply (which is either a bake element in an electric oven or a main oven burner in a gas oven). *Id.* ¶ 68. The sensor is responsible for regulating the "the amount of resistance in electrical circuits linked to the control board[,]" which directly modifies temperature. *Id.* ¶¶ 69–70. The control board also regulates the temperature for the burners. *Id.* ¶ 72.

Moreover, the severity of the temperature fluctuation for the named Plaintiffs is ambiguous. Plaintiff Charles's oven "would not maintain its set temperature." *Id.* ¶ 20. The same is alleged as to Plaintiff Wesley and Plaintiff Peacock. *Id.* ¶¶ 29, 41. Neither the burners nor the oven would maintain their set temperatures for Plaintiff D'Andrea. *Id.* ¶ 51. However, given that Plaintiffs Peacock and D'Andrea purchased toaster ovens to use as substitutes, *id.* ¶¶ 44, 53, the Court may reasonably infer that they suffered temperature fluctuations severe enough to interfere with the normal use of their ovens.

Reviewing the parties' caselaw, it appears that there is split in authority as to the level of factual allegations necessary to plausibly plead a defect. Numerous courts have found that alleging the defect, along with the effects of the defect, is sufficient. *See, e.g.*, *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115 (C.D. Cal. 2021) (finding that the complaint provides fair notice where it identifies the particular part or system affected by the defect, and describes the problems

caused by the defect, and that there is no need to "indicate how the alleged defect caused the reported symptoms," nor the "mechanical details of an alleged defect"); *Zuehlsdorf v. FCA US LLC*, No. 18-1877, 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019) (finding that the plaintiff's claims provided fair notice to the defendant because the complaint identified the defective component and described the problems caused by the defect, even though it did not indicate how the alleged defect caused those symptoms); *see also Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 274 (E.D. Mich. 2021) (finding that the plaintiffs adequately pled a defect where the complaint alleged the symptoms of the defect and the defect itself); *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 20-5889, 2020 WL 10354127, at *7 (C.D. Cal. Nov. 18, 2020) (same); *Loo v. Toyota Motor Sales, USA, Inc.*, No. 19-0750, 2019 WL 7753448, at *6 (C.D. Cal. Dec. 20, 2019) (same).

The Court in *DeCoteau v. FCA US LLC* , No. 15-00020, 2015 WL 6951296, at *3–4 (E.D. Cal. Nov. 10, 2015) took a more nuanced approach. The matter concerned defective transmissions, a Dual Dry-Clutch Transmission ("DDCT"), in certain vehicles. *Id.* at *1. While the plaintiffs alleged the effects of the defective transmission, they failed to indicate what was actually defective in the DDCTs. *Id.* at *3. The Court in *DeCoteau* reasoned as follows:

> The Court does not necessarily expect all plaintiffs to have to "plead the mechanical details" of a defect in order to state a claim. *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011). However, the level of specificity required appears to directly correlate to the complexity of the machinery in question. *See, e.g.*, *Yagman[v. General Motors]*, 2014 WL 4177295 at *2 [(C.D. Cal. Aug. 22, 2014)] (requiring more detailed factual allegations where either engine or electrical system could have possibly been defective); *Fontalvo[ex rel. Fontalvo v. Sikorsky]*, 2013 WL 4401437 at *4 [(S.D. Cal. Aug. 15, 2013)] (allegations about a "wide array of parts" that made helicopter defective were insufficient to state claims for strict products liability, negligence, and breach of warranty). In a challenge regarding a less complex component, allegations similar

to Plaintiffs' might be sufficient. *See Aguilar[ v. General Motors, LLC]*, 2013 WL 5670888 at *7 [(C.D. Cal. Oct. 16, 2013)] (allegation of a "steering defect" was sufficient to survive a motion to dismiss for failure to state a claim). In this case, however, Plaintiffs must go further than a conclusory allegation that the Transmission Defect exists and is responsible for the injuries outlined in the FAC because automatic transmissions, including the DDCT, are complicated systems that demand more detailed factual allegations in order to identify a plausible defect. Given the complexity of the DDCT, Plaintiffs must allege the specific facts that plausibly support their belief in the existence of a defect for which Defendant is responsible in order to give Defendant sufficient notice to defend against their claims. In doing so, Plaintiffs must also plausibly connect the existence of the alleged defect to the injuries they claim to have suffered.

*Id.*

The Court finds the reasoning in *DeCoteau* to be persuasive. Given the factual allegations in this matter, Plaintiffs must plausibly assert what is actually defective about the temperature sensor. Indeed, *Plaintiffs*' other allegations (from the repair technicians and on-line reviews) attribute the defect, in whole or in part, to other components. These other allegations undercut the plausibility of Plaintiffs' claim that it is the sensor that is defective.

In sum, the Court finds that Plaintiffs have not adequately alleged a defect. Given this ruling, the Court need not go further, but given that Plaintiffs will be given leave to file an amended pleading, the Court reviews the other issues that have been raised.

### B. Breach of Express Warranty Claim (Count I)

Plaintiffs assert a breach of express warranty claim on behalf of the New Jersey and Florida subclasses. SAC ¶¶ 108–119. Samsung's express warranty applies to "manufacturing defects in materials or workmanship" for one year from the date of the original purchase. *See id.* ¶¶ 18, 27, 39, 49.[6] Plaintiffs contend that Samsung breached this warranty by failing to provide adequate

---

[6] The terms of the warranty can be found at:

repairs when Plaintiffs sought them following the manifestation of the defect.  *Id.* ¶ 114.  Samsung argues that this claim should be dismissed for three reasons: (1) Plaintiffs fail to allege that Samsung was contacted within the one-year warranty period; (2) the Florida Plaintiffs continue to fail to allege sufficient facts to show reliance; and (3) the alleged defect is a "design defect," rather than a defect in manufacturing or workmanship, and therefore is not covered by the warranty.  The Court addresses each argument in turn.

First, Samsung argues that because the SAC does not plead that Plaintiffs contacted Samsung about the alleged defect within the one-year warranty period, Plaintiffs fail to adequately allege a breach of Samsung's one-year warranty obligations.  Def. Br. at 11–13.  The Court agrees. The facts pled allow the court to reasonably infer that each Plaintiff's range failed within the express warranty period[7] and that Plaintiffs contacted Defendants regarding these failures.  *See* SAC ¶¶ 30, 42, 52.  It is not clear, however, *when* that contact was made, only that it was made at

---

https://downloadcenter.samsung.com/content/UM/201904/20190417151932912/NE59J7630SS_AA_DG68-00598A-09_EN-MES-CFR.pdf.  In relevant, part, the warranty provided as follows:

> This SAMSUNG brand product, as supplied and distributed by SAMSUNG ELECTRONICS AMERICA, INC. (SAMSUNG) and delivered new, in the original carton to the original consumer purchaser, is warranted by SAMSUNG against manufacturing defects in materials or workmanship for the limited warranty period, starting from the date of original purchase, of:
> > One (1) Year Parts and Labor
> . . . To receive warranty service, the purchaser must contact SAMSUNG at the address or phone number provided below for problem determination and service procedures[.]

[7] *See* SAC ¶¶ 25, 29 (alleging that Ms. Wesley purchased her range in May 2018, and that it failed in November 2018); *Id.* ¶¶ 37, 41 (alleging that Ms. Peacock purchased his range in September 2020, that it was installed in December 2020, and that it failed "immediately thereafter"); *Id.* ¶¶ 47, 51 (alleging that Mr. D'Andrea purchased his range in February 2018, and that it failed within weeks of the purchase).

some point [a]fter the Class Range failed."[8] *See Spera v. Samsung Elecs. Am. Inc.*, No. 12-05412, 2014 WL 133425, at *8 (D.N.J. Apr. 2, 2015) (dismissing the express warranty claim because "the Court cannot discern from the Complaints whether [the defendant] was contacted during the warranty period.").[9]   Because the Court cannot determine from the SAC whether Plaintiffs contacted Samsung within the one-year warranty period, the breach of express warranty claims are also not sufficiently pled.

As to its reliance argument, Samsung contends that Plaintiffs Welsey and Peacock (the "Florida Plaintiffs") fail to adequately plead reliance on Samsung's express warranty.  Def. Br. at 16–18.  In its December 3, 2021 Opinion, the Court found that under Florida law, "[t]he weight of authority" suggests that justifiable reliance is required to plead a breach of express warranty claim, and that Plaintiffs failed to adequately plead reliance.  D.E. 44 at 12.  The Court explained that the FAC was inadequate because there were no allegations pertaining to "where the warranty appeared, the terms of the warranty, how Peacock or Wesley learned of the warranty, or any other details demonstrating that Plaintiffs were aware of the warranty *prior to* their purchase."  D.E. at 12 (emphasis added).  In the SAC, Plaintiffs allege that the Florida Plaintiffs were "aware that [their] Class Ranges were covered by the Samsung warranty;" that "[t]he warranty was included in the user manual" that came with each of their Class Ranges; that the terms of the warranty

---

[8] *See* SAC ¶¶ 30, 42, 52 (alleging, with respect to each Plaintiff, that "[a]fter the Class Range failed, [Plaintiff] contacted Samsung[.]"

[9] *See also Wilson v. Volkswagen Grp. Of Am., Inc.*, No. 17-23033, 2018 WL 4623539, at *3 (S.D. Fla. Sept. 26, 2018) (dismissing the express warranty claim because the plaintiffs did not allege that they sought repairs or replacements from the defendant within the applicable warranty period); *Fishman v. General Elec. Co.*, No. 12-cv-00585, 2014 WL 1628369, at *4 (dismissing an express warranty claim where the plaintiffs indicated that they contacted the defendant but failed to allege that this contact was made during the one-year warranty period (citing *Spera*, 2014 WL 133425, at *8)); *cf. Dewey v. Volkswagen, AG*, 558 F. Supp. 2d 505, 520 (D.N.J. 2008) ("[I]f the repair is sought outside the warranty period, it is not covered by the express warranty.").

provide that "Samsung warrants against manufacturing defects in materials and workmanship for one year;" and that "[a]bsent this warranty, [Plaintiffs] would not have purchased [their] Class Range."  SAC ¶¶ 27, 39.  The Court agrees with Samsung that the allegations remain insufficient because the facts alleged do not show that Plaintiffs were aware of the warranty terms and relied on those terms *prior to* purchasing their ranges.  Def. Br. at 16–18; *see Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687, 695 (S.D. Fla. 2010) ("[T]here is no express warranty that could be breached unless a plaintiff actually relied on [the seller's] promises about [the product] in reaching a decision to purchase it."), *vacated on other grounds*, 635 F.3d 1279 (11th Cir. 2010).

Lastly, with respect to its "design defect" argument, Samsung contends that because the express warranty only covers "defects in materials or workmanship," there has been no breach because Plaintiffs' allegation are akin to a "design defect[.]".  Def. Br. at 13–16.[10]  Plaintiffs argue that their allegations that "the temperature sensor is unable to adequately regulate the resistance inside the circuits, causing the conducting materials to degrade, signals to be delayed, and the control boards to fail over time" support a reasonable inference of a defect in materials and

---

[10] Samsung argues that like in *Coba*, where the court determined that the allegations "had all the trappings of a design defect" because the plaintiff alleged a "common issue" impacting "all tanks at issue," here, Plaintiffs' allegations that there is a defect in each class range confirm that Plaintiffs are alleging a design defect.  Def. Br. at 15 (citing *Coba v. Ford Motor Co.*, 932 F.3d 114, 123 (3d Cir. 2019).  But *Coba* was decided at the motion for summary judgment stage, and at the motion to dismiss stage, courts have found that "asserting that the defect in question affects all of the Class [products] produced by [the defendant] does not, own its own, necessarily preclude an allegation of a manufacturing defect."  *Riley v. Gen Motors*, LLC, No. 21-0924, 2022 WL 787871, at *8 (S.D. Ohio Mar. 15, 2022); *see also Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 548 (D. Conn. 2020) (declining to rely on the defendant's inference that because [the plaintiff] alleged that "all class vehicles" suffered from the alleged defect, the plaintiff necessarily alleged a design defect rather than a manufacturing defect, because doing so "would be to invert the motion to dismiss standard," since it was possible that either could be the case); *Francis v. Gen. Motors*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020) (declining to determine at the pleading stage whether the defect was due to poor design or manufacturing despite the defendant's argument that if "all" of the class is affected, the defect must necessarily be one of design, because it was "logically possible" that either could be the case).

12

workmanship.  Pl. Opp. Br. at 18 (citing SAC ¶ 71).  Plaintiffs also contend that the distinction between a design or manufacturing defect is largely "a matter of semantics," therefore this District generally declines to resolve this issue at the motion to dismiss stage.  Pl. Opp. Br. at. 18–19. Samsung has made credible arguments as to why Plaintiffs have actually alleged a design defect, but the Court agrees with Plaintiffs that at this stage, Samsung's argument does not provide adequate grounds for dismissal.  *See Alin v. Am. Honda Motor Co.*, No. 08-cv-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); *see also Fishman v. General Elec. Co.*, No. 12-cv-00585, 2014 WL 1628369, at *4 n. 4 (D.N.J. Apr. 23, 2014) (quoting *Alin*, 2010 WL 1372308, at *6) (finding that the defendant's argument that the express warranty claim must fail because the warranty only covered "defects in materials and workmanship," and the plaintiffs themselves referred to the defects as "design defects" in the complaint, "d[id] not provide adequate grounds for dismissal" at this stage).

Accordingly, this claim is dismissed because in addition to failing to adequately plead a defect, the New Jersey and Florida subclasses did not sufficiently allege that Samsung was contacted within the one-year warranty period, and the Florida Plaintiffs also failed to adequately allege reliance.

### C.  Implied Warranty of Merchantability (Count II)

Samsung next argues that Plaintiffs' allegations are no longer sufficient to show that the ranges for the New Jersey and Florida subclasses are unmerchantable because the SAC deletes

allegations from the FAC that "underpinned" the Court's prior ruling.[11]  Def. Br. at 18–21.  "An amended complaint supersedes the original version."  *Snyder v. Pascack Valley Hosp.,* 303 F.3d 271, 276 (3d Cir.2002).  Therefore, the Court will not consider material that has been deleted from the FAC in the instant motion.  *In re General Motors Class E Stock Buyout Sec. Litig.,* 694 F.Supp. 1119, 1122 n .2 (D. Del. 1988).  Here, the factual allegations that the Court relied on in finding that Plaintiff D'Andrea (New Jersey) and Plaintiff Wesley (Florida) sufficiently alleged unmerchantability remain the same.[12]  Accordingly, Samsung's arguments as to this claim fail. Nevertheless, due to the defect ruling above, this claim is dismissed. [13]

### D.  Song-Beverly Consumer Warranty Act (Count III)

Samsung contends that Plaintiffs' Song-Beverly Act ("SBA") claim should be dismissed because Plaintiff Charles's alleged injury did not occur within the one-year warranty provided under the SBA.  Def. Br. at 21 (citing Cal. Civ. Code §1791.1(c) ("[I]n no event shall [the] implied

---

[11] In the Court's prior ruling, it found that Plaintiffs' allegations about the defect impact the primary use of the Class Ranges because the defect allegedly prevents them from cooking food in a reasonable amount of time or resulted in the food being scorched.  D.E. 44 at 17.

[12]  In its prior ruling, the Court determined that unmerchantability was sufficiently pled as to D'Andrea (New Jersey) based on the allegation that he does not use his Class Range because of the defect and that as a result he has purchased a toaster oven as a replacement, D.E. 44 at 16 (citing FAC ¶ 80), and as to Wesley (Florida), based on her allegation that she purchased the Class Range to cook and that she cannot perform this task sufficiently because the temperature does not maintain a set temperature and the food does not cook in a reasonable amount of time or is scorched.  D.E. 44 at 17 (citing FAC ¶ 46, 117).  These allegations remain the same in the SAC. *See* SAC ¶¶ 34, 53, 75.  And, as noted, Plaintiff Peacock (Florida) is alleged to have also resorted to the use of a toaster oven.  *Id.* ¶ 44.

[13] Although the parties do not specifically contest the adequacy of Plaintiff Peacock's (Florida) unmerchantability claim, which was not alleged in the FAC and thus was not ruled on previously, the Court finds that Plaintiff Peacock's claim is sufficient for the same reasons as Plaintiff Wesley. *See* SAC ¶¶ 44, 75 (alleging that Ms. Peacock's oven will not maintain its set temperature, that she has purchased a toaster oven as a temporary replacement, and that the food does not cook in a reasonable amount of time or is scorched).

14

warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.")).  Plaintiffs do not dispute Plaintiff Charles bought her range in October 2017, and that it did not "fail" until November 2020—outside of the one-year warranty period.  SAC ¶¶ 16, 20.  But Plaintiffs allege that the Class Ranges suffered from a latent defect at the time of purchase (SAC ¶¶ 2, 137), and argue that under California law, a consumer does not need to "discover and report to the seller a latent defect" within the period specified by the SBA.  Pl. Opp. Br. at 14 (citing *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 295 (Cal. Ct. App. 2009)) (finding that the SBA does not create a deadline for discovering latent defects).  In *Mexia*, the court explained that the SBA does not create a deadline for discovering latent defects because in the case of a latent defect, a product is unmerchantable under the SBA by the existence of the unseen defect, not by its subsequent discovery.  95 Cal. Rptr. 3d at 291.  Samsung asks the Court to disregard the *Mexia* decision on the ground that some courts have rejected its reasoning.  Def. Br. at 22–23.  In particular, Samsung relies heavily on the *Talley* opinion, which determined that *Mexia*'s reading of the SBA would render the durational limits of the Act meaningless, and thus declined to follow *Mexia*, despite recognizing that "*Mexia* is not a dead letter." Def. Br. at 22–23 (citing *Talley v. Gen. Motors, LLC*, No. 20-1137, 2022 WL 958467, at *2 (D. Del. Mar. 30, 2022)).[14]

The Court is not persuaded that it should disregard *Mexia*.  "'An intermediate appellate state court's decision 'is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Majdipour v. Jaguar Land Rover North America, LLC*, No. 12-7849, 2013

---

[14] Samsung also argues that Ms. Charles's latent defect allegations are conclusory but courts in this district have found that alleging that the defect is a "latent defect" in the complaint is enough.  *See Subaru Battery*, 2021 WL 1207791, at *21 (citing Consol. Compl. ¶ 300) (concluding that the latent defect exception to the SBA applies where the plaintiffs alleged in the complaint that the defect was a "latent defect").

WL 5574626, at *23 (D.N.J. Oct. 9, 2013) (quoting *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 36, 406 (3d Cir. 2000)).  *Mexia* remains good law in California, as the Supreme Court of California has denied review of this decision.  *See Mexia, (Jess) v. Rinker Boat Co., Inc.*, No. S174901, 2009 Cal. LEXIS 9238 (Aug. 26, 2009) ("Petition for review and depublication request(s) denied.").  While federal courts in California have criticized the *Mexia* decision,[15] Samsung fails to point to language from the California Supreme Court which calls *Mexia*'s effect into question. Samsung similarly fails to point to other California Appellate Court decisions that have questioned *Mexia* or reached a different result.  In addition, courts in this district have declined invitations to depart from *Mexia*, after taking "into account the statutory history, its language, and its purpose," finding that *Mexia* "is a thoroughly reasoned" decision, and that "skepticism of a few federal district courts concerning the wisdom of that decision" are not "persuasive data that the highest court of the state would decide otherwise." *Majdipour*, 2013 WL 5574626 at *23; *see also In re Subaru Battery Drain Prod. Liab. Litig.*, No. 20-3095, 2021 WL 1207791, at *21 (D.N.J. Mar. 31, 2021) (citing *Mexia*, 174 Cal. App. at 1304) (denying the defendant's motion to dismiss the SBA claim because the plaintiffs alleged a latent defect and "the California Court of Appeals has held that this one-year-from-purchase period does not apply to

---

[15] *See, e.g.*, *Valencia v. Volkswagen Grp. of Am. Inc*, 119 F. Supp. 3d 1130, 1140 (N.D. Cal. 2015) (internal citations omitted) ("*Mexia's* broader holding 'renders meaningless any durational limits on implied warranties[,]' as '[e]very defect that arises could conceivably be tied to an imperfection existing during the implied warranty period.' Under such a reading of *Mexia*, even 'defects' that manifest twenty or thirty years after the date of purchase would fall within Song-Beverly's one-year limitations period."); *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011) (citation omitted) ("*Mexia* enjoys the limelight as a case 'contrary to established California case law with respect to the duration of the implied warranty of merchantability.'").

products with latent defects.").[16]  Therefore, the Court dismisses this claim due to the defect ruling above, but would otherwise find that it was sufficiently pled.[17]

### E. Violations of California Business and Professions Code §17200, *et seq.* ("UCL") (Count IV)

The UCL establishes three types of unfair competition: "'acts or practices which are unlawful, or unfair, or fraudulent.'"  *Saldate v. Wilshire Credit Corp.*, 711 F. Supp. 2d 1126, 1138 (E.D. Cal. 2010) (quoting *Shvarts v. Budget Group, Inc.*, 97 Cal. Rptr. 2d 722, 725 (2000)). California law requires a plaintiff alleging a violation of the UCL "to state 'with reasonable particularity the facts supporting the statutory elements of the violation.'"  *Kaiser Found. Health Plan, Inc. v. Medquist, Inc.*, No. 08-4376, 2009 WL 961426, at *10 (D.N.J. Apr. 8, 2009) (quoting *Khoury v. Malys of Cal., Inc.*, 17 Cal Rptr. 2d 708, 712 (1993)).  The Court previously dismissed Plaintiffs' UCL claim on behalf of the California subclass because Plaintiffs failed to adequately plead that Samsung had a duty to disclose the purported defect, which the Court determined was the underlying basis of that claim.  D.E. 44 at 10–11.  Plaintiffs now assert an amended UCL claim that omits any allegations about fraudulent practice and instead adds allegations that Samsung's conduct was "unfair" because Samsung allegedly "refused repairs" and "sold ranges that overheat, creating a fire hazard that puts consumers and their personal property at risk."  SAC ¶¶ 148(d), (f).

---

[16] *See also Gray v. BMW of N. Am.*, LLC 22 F. Supp. 3d 373, 384 (D.N.J. 2014) (recognizing that the SBA is a California statute that "is a pro-consumer legislation intended to expand the protections of the implied warranty of merchantability beyond that in the Uniform Commercial Code," and that under the UCC, there is, in effect, no "duration" of the implied warranty).

[17] Any SBA claims based on "willful" violations of the SBA are dismissed, as agreed by the parties. *See* Def. Br. at 23 (citing D.E. 44 at 9) (arguing that any claim for a "willful" violation of the SBA should be dismissed because the Court already held that "Plaintiffs fail[ed] to sufficiently allege that [Samsung knew] of the alleged defect when any Plaintiff purchased his or her range."); Pl. Opp. Br. at 13 n.8 ("Plaintiffs do not oppose dismissal to the extent the claim is based on a 'willful' violation of the Song-Beverly Act.").

Plaintiffs also maintain that such conduct was "unlawful" under the UCL because it violates the SBA.  SAC ¶ 146.   Samsung argues (1) that the amendments fail to cure the previously deficient "unfair conduct" claim; and (2) that the "unlawful conduct" claim must fail, because it is based on the SBA violation, which Samsung contends was inadequately pled.  Def. Br. at 23–26.

As to the "unfair conduct" claim, the Court agrees with Samsung that Plaintiff Charles's new allegation that Samsung "refused repairs" fails to state with "reasonable particularity" the facts supporting this claim.  Def. Br. at 25.  Plaintiffs merely allege that Samsung told Ms. Charles that it would be at least one month before Samsung could send someone for a repair.  SAC ¶ 21.[18] Accordingly, this aspect of the UCL claim is not plausibly pled.  As to the "unlawful conduct" claim, "the UCL 'borrows' violations of other laws and treats them as unlawful practices independently actionable under the UCL." *Saldate*, 711 F. Supp. 2d at 1137–38; *see, e.g.*, *Elias v. Hewlett-Packard Co.*, No. 12-0421, 2014 WL 493034, at *11 (N.D. Cal. Feb. 5, 2014) (upholding UCL unlawful claim where SBA violation was adequately pled).  Therefore, based on the Court's finding above that the SBA claim was sufficiently alleged, the Court also finds the unlawful conduct aspect of the UCL claim sufficient.

In sum, because the Court finds that Plaintiffs failed to plausibly plead a defect, the UCL claims are dismissed.  Otherwise, the Court would find that Plaintiffs' pleadings to proceed pursuant to the "unfair" prong are inadequate, while Plaintiffs' pleadings to proceed pursuant to the "unlawful" business practice prong are adequate.

---

[18] Plaintiff also points to allegations about Plaintiffs Wesley (Florida), Peacock (Florida), and D'Andrea (New Jersey) to support this claim.  *See* Pl. Opp. Br. (citing SAC ¶¶ 30-31, 42, 52, 78). However, "the UCL does not reach 'claims of non-California residents injured by conduct occurring beyond California's borders[.]'" *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1094 (N.D. Cal. 2019) (quoting *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23 (1999)).  Therefore, the Court finds these allegations not pertinent.

**F.  Rule 23(d)(1)(D) Moton to Strike Class Allegations**

The Court now turns to Samsung's request to dismiss or strike Plaintiffs' class allegations. Def. Br. at 26–33.  Plaintiffs seek to bring this action on their own behalf and on behalf of the California, New Jersey, and Florida Subclasses.[19] SAC ¶ 99.  Plaintiffs define each subclass as "[a]ll persons who purchased, other than for resale, a Samsung range containing a temperature sensor bearing component model number DG32-00002B, from Samsung or its authorized retailers in [California, New Jersey, or Florida] between January 1, 2016 and the present."  SAC ¶ 99.

The general view in this district is that it is "premature" to "strike class allegations" at the "pleading stage."  *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *8 n. 7 (D.N.J. Apr. 27, 2018) (quoting *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016) ("[d]ismissal of class claims prior to discovery and a motion to certify the class by [the] plaintiff is the exception rather than the rule, and is almost uniformly disfavored.")); *see also Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2013 WL 6047556, at *3 (D.N.J. Nov. 12, 2013) (citation omitted) ("Generally courts do not consider whether a proposed class meets the Fed. R. Civ. P. 23 class requirements until after [the] plaintiffs move for class certification."); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *4 (D.N.J. June 6, 2014) ("[T]he Court concludes that the arguments raised by [the] [d]efendant in support of its request to strike or dismiss [the] [p]laintiff's class action allegations are premature given the early stage of this litigation.").  Accordingly, the Court will only dismiss Plaintiffs' class allegations at this stage if, on its face, the SAC demonstrates that the Rule 23 requirements cannot

---

[19] Plaintiffs SAC alleged that this action was also brought on behalf of the "Nationwide Class," but Plaintiffs have since "withdraw[n] their nationwide class certification and will not propose such a class in the amended complaint, as no claims are brought on behalf of a nationwide basis." Pl. Opp. Br. at 24 n.16.  Therefore, the Court only considers this motion with respect to the California, New Jersey, and Florida subclasses.

be met even after discovery.  *McPeak v. S-L Distrib. Co.*, No. 12-348, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (citations omitted) ("It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted.").

Samsung contends that Plaintiffs' allegations are untenable on their face because the "wide variety" of problems alleged by Plaintiffs fail to plausibly preclude a finding of predominance, commonality, and typicality.  Def. Br. at 26–31.  In Samsung's view, Plaintiffs have not pled predominance or commonality because if the proposed class is certified, the Court would be forced to engage in individualized inquiries as to each class member—inquiries pertaining to whether the range failed within the warranty period and whether each member sought repair within the warranty period, among others.  Def. Br. at 27–30.

"'[A]t the motion to strike stage, the burden on plaintiffs is less than at the certification stage.'"  *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 756 (D.N.J. 2021) (quoting *In re Ry. Indus. Emple. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 514 (W.D.Pa. 2019).  Therefore, the Court must only determine whether Plaintiffs have made a "prima facie showing of predominance" or that "it is likely that discovery will reveal evidence" that critical elements of Plaintiffs' claims may be proven on a class-wide basis.  *Id.*  Indeed, many courts in this Circuit have declined to conduct a predominance inquiry at this stage, recognizing that dismissal of class claims before discovery "is the exception rather than the rule," and that "[w]ithout the benefit of at least some discovery,  . . . any determination regarding predominance would be premature."  *Derrick v. Glen Mills Sch.*, No. 19-1541, 2019 WL 7019633, at *9 (D.E. Pa. Dec. 19, 2019).  Accordingly, because "[i]t is not this Court's place to predict what evidence may be found and which theory (or theories) [the] [p]laintiffs may pursue," and because Plaintiffs have

made a prima facie showing of predominance by referring to a series of common factual and legal issues arising out of Samsung's conduct, the Court declines to strike the allegations on these grounds. *Luppino*, 2013 WL 6047556, at *7; *Buck v. Am. Gen. Life Ins. Co*, No. 17-13278, 2018 WL 5669173, at *9 (D.N.J. Oct. 31, 2018).

For similar reasons, the Court does not credit Defendant's typicality arguments at this stage. Def. Br. at 31. Typicality is present so long as the claims arise out of the same "practice or course of conduct" and are "based on the same legal theory." *Rivet v. Office Depot Inc.*, 207 F. Supp. 3d 417, 430 (D.N.J. 2016) (citation omitted). Therefore, putative class members need not share identical claims to satisfy the typicality requirement, and at this stage, "the Court will not consider the potential factual differences among individual Plaintiffs, which could otherwise defeat class certification." *Allergan*, 537 F. Supp. 3d at 752, 755 (citation omitted). It is enough that "the claims asserted by the named Plaintiffs and putative class members stem from the same course of conduct[]" and that they "share an aligned interest" in seeking relief from Samsung. *Id.* at 755.

Lastly, Samsung argues that the class allegations should be stricken because the subclasses include members whose ranges did not fall within the one-year warranty period and thus have no injury. Def. Br. at 31–32.[20] Plaintiffs counter that Samsung's argument is only applicable to the express warranty claims, and that, with respect to the implied warranty claims, Samsung disregards the latent nature of the alleged defect. Pl. Opp. Br. at 29. Because "a determination as to whether the class definition encompasses persons who have no viable cause of action should be made with

---

[20] Samsung cites to *TransUnion LLC v. Ramirez* to argue that members of the putative class have no injury, and thus have no standing (Def. Reply at 20–21) (citing 141 S. Ct. 1290, 2208 (2021)); however, in *TransUnion*, the Supreme Court explicitly declined to "address the distinct question whether every class member must demonstrate standing before a court certifies a class." 141 S. Ct. at 2208 n. 4 (2021).

the benefit of a full record," the Court declines to strike the allegations on these grounds as well. *McPeak v. S-L Distribution Co., Inc.*, No. 12-348, 2014 WL 4388562, at *11 (D.N.J. Sept. 5, 2014); *see also Cannon v. Ashburn Corp.*, No. 16-1452, 2016 WL 7130913, at *12 (D.N.J. Dec. 7, 2016) (acknowledging that while the defendants' argument may ultimately prove persuasive, the defendants' motion to strike the class allegations is premature at this stage because presumably, discovery will clarify the scope of the class).

Accordingly, Samsung's motion to strike the class action allegations is denied as premature.

### G.  Plaintiffs' Cross-Motion for Leave to Amend

Finally, the Court turns to Plaintiffs' request to file a Third Amended Complaint to add four additional plaintiffs who propose to assert breach of express and implied warranty claims under Illinois, Pennsylvania, Virginia, and Washington law.  Motions to amend are typically governed by Federal Rule of Civil Procedure 15(a), while motions to amend after a deadline in a scheduling order are also subject to a higher "good cause" standard set forth in Rule 16.  *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).  Under Rule 15(a)(2), once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  A court "should freely give leave when justice so requires." *Id.*  As a result, leave to amend is generally granted unless there is (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Forman v. Davis*, 371 U.S. 178, 182 (1962). The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (citation omitted) ("An amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be

granted.'"). The ultimate decision to grant or deny leave to amend is a matter committed to the Court's sound discretion. *See, e.g. Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971).

Whereas here, a party seeks to amend the pleadings after a deadline in a scheduling order, they must also satisfy the requirements of Rule 16(b)(4), which requires that the party show good cause. *Premier Comp Sols., LLC*, 970 F. 3d at 319.  Whether "good cause" exists under Rule 16 will depend primarily on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005).  In determining whether good cause exists, courts typically consider whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *McGrath v. Rainbow Pediatrics, P.C.*, No. 19-4714, 2021 WL 3616749, at *3 (D.N.J. Aug. 16, 2021); *see also Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the [s]cheduling [o]rder deadline").  Courts may also consider whether discovery is ongoing, as this may be indicative of diligence.

Here, the Court finds that Plaintiffs satisfied Rule 16(b)(4)'s good cause requirement because Plaintiffs diligently pursued the proposed new plaintiffs' claims after learning of them. The original scheduling order deadline to add parties was October 29, 2021.  D.E. 33.  Plaintiffs certify that, at that time, none of the proposed new plaintiffs had engaged counsel, so Plaintiffs did not know the facts supporting the proposed new plaintiffs' claims.  Pl. Opp. Br. at 30–31, Pl. Reply at 2 (both citing Park Cert. ¶ 4).  Instead, the new plaintiffs engaged counsel during the time in

which the parties were mediating, or shortly thereafter.[21]  Pl. Opp. Br. at 31 (citing Park Cert. ¶ 8).

On March 18, 2022, two weeks after the parties participated in an all-day mediation (the efforts of

which were unsuccessful), Plaintiffs notified Samsung of their intent to seek leave to add the new

Plaintiffs and asked Samsung to stipulate to these additions, or alternatively, stipulate to extending

Plaintiffs' deadline to file the SAC.  Park Cert. ¶¶ 7, 9.  Samsung did not agree to either request

until April 4, 2022, the day before Plaintiffs' SAC was due.  Park Cert. ¶ 10.  Plaintiffs' efforts to

stipulate as to the new plaintiffs prior to filing their SAC further demonstrates reasonable diligence.

And Samsung's arguments to the contrary are uncompelling.  Samsung suggests, with the benefit

of hindsight, that Plaintiffs should have sought to extend the October 29, 2021 amendment

deadline, and that there is no reasonable justification for not bringing the claims sooner.  Def.

Reply at 23–24.  As Plaintiffs explained, because the new plaintiffs only recently engaged counsel,

they were not aware of nor able to bring these claims sooner.  Pl. Opp. Br. at 30–31.  As such, the

Court does not agree with Samsung that Plaintiffs failed to exercise reasonable diligence, and thus

show good cause, under Rule 16.

Because Plaintiffs demonstrate good cause under Rule 16(b)(4), the Court now turns to the

more liberal standard to amend the complaint under Rule 15(a)(2).[22]  Samsung does not contend

---

[21] On December 29, 2021, after the Court ruled on Samsung's motion to dismiss Plaintiffs' FAC, the parties stipulated to an amended scheduling order "to allow time for the parties to conduct a mediation."  D.E. 46 at 2.

[22] *See* Fed. R. Civ. P. 16, Prac. Comment. ("This distinction [between Rule 15 and Rule 16] is important.  While a showing of diligence may establish good cause under Rule 16 to extend the amendment deadline in the scheduling order, there may still be good reason for the court to deny the amendment under Rule 15 standards, such as prejudice or futility."); Fed. R. Civ. P. 15, Prac. Comment. ("Although as a general rule the Rule 16(b) good cause standard is more rigorous than the Rule 15(a) standard, the failure to satisfy either rule will preclude the amendment.  For example, while a showing of diligence might satisfy the good cause requirement under Rule 16(b)(4), the court could still deny leave if the amendment would be futile [under Rule 15].").

that Plaintiffs' amendments would cause undue delay, were made in bad faith, or based on a dilatory motive, or are repetitive of previous denials.  Therefore, the Court only considers whether Plaintiffs' amendments are futile, which as stated above, is assessed under a 12(b)(6) standard. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  In light of the Court's dismissal of Plaintiffs' SAC for failure to plausibly plead a defect, Plaintiffs' cross-motion for leave to amend is denied as futile.   Nevertheless, because Rule 16(b)(4) and Rule 15(a)(2) are otherwise satisfied, if Plaintiffs can cure the defect allegations, Plaintiffs may include the proposed new plaintiffs in the amended complaint.

## IV.   CONCLUSION

Defendant's motion to dismiss and strike is **GRANTED in part** and **DENIED in part**, and Plaintiffs' cross-motion for leave to amend is **DENIED**.  Plaintiffs have thirty (30) days to file another amended complaint, if it so chooses, consistent with this Opinion.  If Plaintiffs fails to file a third amended complaint, the dismissal will be with prejudice.  This is the last time that the Court will grant Plaintiffs' leave to amend.  An appropriate Order accompanies this opinion.

Dated: October 28, 2022

John Michael Vazquez, U.S.D.J.

25