**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHY WESLEY, ALESIA CHARLES, DANIELLE D'ANDREA, DAVID MARK EDMONDSON, NIKILYN GRIMSLEY, PAUL LIND, JO PEACOCK, and THERESA SIMPSON, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendant*. | Civil Action No. 20-18629<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case returns to the Court on Defendant Samsung Electronics America Inc.'s ("Samsung") motion to dismiss Plaintiffs' Third Amended Complaint. D.E. 85. The Court reviewed the submissions in support and in opposition,[1] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Samsung's motion to dismiss is **GRANTED**.

---

[1] Plaintiffs' Third Amended Complaint, D.E. 76, will be referred to as "TAC"; Defendant's brief in support of its motion to dismiss, D.E. 85-1, will be referred to as "Def. Br."; Plaintiffs' brief in opposition, D.E. 88, will be referred to as "Plfs. Opp."; and Defendant's reply brief, D.E. 89, will be referred to as "Def. Reply."

I. **FACTUAL BACKGROUND**[2]

In this putative class action, Plaintiffs allege that they purchased Samsung gas and electric ranges from various authorized resellers, such as BestBuy, Sears, Wayfair, Lowes, and Home Depot. TAC ¶¶ 19, 29, 42, 53, 63, 73, 86, 96. Plaintiffs reviewed Samsung marketing materials and were aware that their ranges were covered by a Samsung warranty, which was included in the user manual that came with the range. *Id.* ¶¶ 20-21, 30-31, 42-43, 54-55, 64-65, 74-75, 87-88, 97-98. This warranty covers manufacturing defects in materials and workmanship for one year. *Id.* ¶¶ 21, 31, 43, 55, 65, 75, 88, 98. After purchasing the ranges, Plaintiffs began to experience problems with the temperature settings of the ovens, as the ovens would not maintain the set temperature.[3] *Id.* ¶¶ 23, 33, 46, 57, 67, 77, 90, 100. Plaintiffs attempted to contact Samsung to have the ranges repaired, but the repairs were either unsuccessful or Plaintiffs were unable to obtain repair services. *Id.* ¶¶ 25, 35-36, 48, 59, 69, 78-80, 92, 102. Plaintiffs Wesley, Peacock, D'Andrea, Lind, Simpson, Grimsley, and Edmondson have since used replacement appliances. *Id.* ¶¶ 39, 50, 60, 70, 83, 93, 103.

Plaintiffs allege that at least 87 Samsung gas and electric range models (the "Class Ranges") "fail to properly cook food on account of a defect in the Samsung oven temperature sensor bearing component model number DG32-00002B and the Range's control board." ¶¶ 118,

---

[2] The factual background is taken from Plaintiffs' TAC, D.E. 76. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Six of the named Plaintiffs allege that their ovens consistently underheat: for Plaintiff Simpson, by approximately 50 degrees; for Plaintiff Charles and Plaintiff Wesley, by approximately 75 degrees; and for Plaintiff Peacock, Plaintiff D'Andrea, and Plaintiff Grimsley, by approximately 100 degrees. TAC ¶¶ 24, 34, 47, 58, 81, 91. Plaintiff Lind alleges that her oven consistently overheats by at least 25 degrees, and Plaintiff Edmondson alleges that his oven both "underheat[s] or overheat[s]." *Id.* ¶¶ 68, 101.

144.  Plaintiffs define the alleged defect as a "distort[ion] of information received by the control board, which in turn causes the oven to deviate from the user-selected temperature (the 'Defect')." *Id.* ¶ 1.  Plaintiffs explain that the temperature sensor "measures the internal oven temperature and communicates it to the oven's control board by varying the amount of resistance in the conducting material." *Id.* ¶ 121.  Plaintiffs continue that "[r]esistance is a measurement of how easily the electrical current can pass through the conducting material;" thus, "changes in resistance affect the rate at which electrical current flows through the conducting material and into the oven's control board." *Id.* ¶ 122.  According to Plaintiffs, when the electrical current flows into the control board, it is converted into voltage, and that voltage powers the control board's switching relays, which open and close the circuits that lead to the oven's heat supply.[4]  *Id.* ¶ 124.  In other words, the "control board tells the[] [heating] elements when to turn on or off," "by converting the current that flows from the temperature sensor into voltage that powers the mechanical switching relays that open and close the circuits leading to those heating elements." *Id.*

Plaintiffs allege that when the Defect manifests, the temperature sensor fails to correctly regulate resistance in the metal conducting material that connects to the control board. *Id.* ¶ 1.  As a result, the control board "receives inaccurate electrical information and does not deliver the correct amount of voltage to the mechanical switches that regulate the oven's heating supply." *Id.*  In turn, the switching relays either (1) remain closed and fail to open the circuits that signal the heating supply to turn on; or (2) remain open and fail to signal the heating supply to turn off. *Id.* ¶ 125.  This causes the ovens to deviate from the user-selected temperature, becoming "either far too hot, posing a safety risk, or barely warm at all." *Id.* ¶ 2.  Plaintiffs further allege that Samsung

---

[4] In electric ranges, the heat supply consists of an electric heating coil; in gas ranges, the heat supply consists of an oven burner, the gas valve, and the ignitor.  TAC ¶ 120.

knew of, and failed to disclose the Defect, and continues to manufacture and sell ranges with the defective sensor. *Id.* ¶¶ 133-38. Had Plaintiffs known of the Defect, they would not have purchased their ranges or would have paid a significantly lower price. *Id.* ¶ 146.

## II. PROCEDURAL HISTORY

Plaintiffs filed this putative class action on December 9, 2020, D.E. 1, and filed the First Amended Complaint ("FAC") on March 3, 2021. D.E. 15. Samsung moved to dismiss, D.E. 16, and on December 3, 2021, the Court granted the motion in part and afforded Plaintiffs 30 days to file an amended complaint.[5] D.E. 44, D.E. 45. On April 5, 2022, Plaintiffs filed the Second Amended Complaint ("SAC"),[6] and Samsung moved to dismiss, or in the alternative, moved to strike the class allegations. D.E. 57, 57-1. Plaintiffs opposed and filed a cross-motion for leave to file a Third Amended Complaint ("TAC"). D.E. 58, 58-1, 59, 62. On October 28, 2022, the Court granted in part and denied in part Samsung's motion to dismiss and to strike (granting the motion to dismiss without prejudice, and denying the motion to strike), and denied Plaintiffs' cross-motion for leave to file an amended complaint. D.E. 72, 73. Nevertheless, because Plaintiffs were granted leave to amend to cure the deficiencies in the SAC, the Court noted that, should Plaintiffs file an amended pleading, they may add the new Plaintiffs that they sought to join in the cross-motion. D.E. 72 at 2 n.2.

---

[5] Based on an amended scheduling order, the deadline for the SAC was extended to April 5, 2022. D.E. 47. One day before the deadline, the parties submitted a joint stipulation indicating that Plaintiffs intended to file a motion for leave to amend their complaint to add new plaintiffs and requesting that the Court extend Plaintiffs' SAC deadline until after Plaintiffs could file, and the Court could decide, Plaintiffs' planned motion for leave to amend. D.E. 49. The Court did not approve the stipulation. D.E. 50.

[6] The SAC omitted a fraud claim, a warranty claim, most of the state consumer protection claims, and some of the express and implied warranty claims that were raised in the FAC. D.E. 52. As a result, those claims were dismissed with prejudice.

4

On November 28, 2022, Plaintiffs filed the TAC. D.E. 76. The TAC includes eight Plaintiffs who bring allegations individually and on behalf of all other similarly situated: Kathy Wesley (Florida), Alesia Charles (California), Danielle D'Andrea (New Jersey),[7] David Mark Edmondson (Washington), Nikilyn Grimsley (Virginia), Paula Lind (Illinois), Theresa Simpson (Pennsylvania), and Jo Peacock (Florida). The TAC asserts claims for breach of express warranty on behalf of the New Jersey, Illinois, Florida, Pennsylvania, Virginia, and Washington subclasses (Count I), breach of implied warranty of merchantability on behalf of the New Jersey, Florida, Pennsylvania, Virginia, and Washington subclasses (Count II), and violations of the Song-Beverly Consumer Warranty Act and California Consumers Legal Remedies Act on behalf of the California subclasses (Count III and Count IV, respectively).

### III.   LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements

---

[7] Danielle D'Andrea, as Administrator of the Estate of Joseph D'Andrea, was substituted as a Plaintiff in this action in place of Joseph D'Andrea on October 13, 2022, pursuant to Federal Rule of Civil Procedure 25(a). D.E. 69.

of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[,]" and give the plaintiff the benefit of all reasonable inferences drawn therefrom. *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### IV. ANALYSIS

Samsung raises numerous grounds for dismissal, arguing first that dismissal is warranted because Plaintiffs still fail to plausibly allege a "defect" in their ranges. Def. Br. at 10-14. The Court agrees. In its October 28, 2022 Opinion, the Court observed that there appears to be a split in authority as to the level of factual allegations necessary to plausibly plead a defect. D.E. 72 at 7-8. While some courts have found that alleging a defect, along with the effects of the defect, is sufficient, others, like the *DeCoteau* court, take a more nuanced approach. *See id.* (collecting cases). To briefly recap, the *DeCoteau* matter concerned allegations about defective transmissions in certain vehicles. *DeCoteau v. FCA US LLC*, No. 15-00020, 2015 WL 6951296, at *1 (E.D. Cal. Nov. 10, 2015). The plaintiffs' claims were dismissed because while the FAC alleged the effects of the defective transmission, it failed to indicate what was actually defective in the transmission. *Id.* at *3. The *DeCoteau* court reasoned that the "level of specificity required" to state a defect claim will "directly correlate to the complexity of the machinery in question," and that because the transmissions are "complicated systems," they "demand more detailed factual allegations in order to identify a plausible defect." *Id.* (citations omitted). This Court found such

reasoning persuasive and determined that, given the complexity of the Range, Plaintiffs failed to plausibly plead a defect.[8]  D.E. 72 at 9.

In reaching this conclusion, the Court addressed the shortcomings of Plaintiffs' SAC. The SAC named the alleged defective component (the oven temperature sensor), described the sensor's role (regulating the amount of resistance in the electrical circuits linked to the control board), and explained that the Ranges contain a "latent defect" in the sensor, which "causes the [] control boards to fail, which in turn causes the [] Range's oven and burner temperatures to deviate from the user-selected temperature settings." D.E. 72 at 6-7 (quoting SAC ¶¶ 1-2, 69-70). But critically, the SAC "fail[]ed to allege specifically what is defective about the [sensor]." *Id.* at 6. It also was ambiguous as to the severity of the temperature fluctuation for the named Plaintiffs. *Id.* at 7. Critically, the Court also found that numerous factual allegations undercut the Plaintiffs' claim that it was the sensor that was defective because such allegations attributed the Defect, in whole or in part, to the many other components responsible for measuring and regulating oven temperature. *Id.* at 6-7. For example, the SAC alleged that certain technicians indicated that the cause of the problem was attributable to both the sensors and control boards. *Id.* The SAC also cited to online consumer complaints that attributed the problem to other components such as the control board and the heating element. *Id.* at 7.

---

[8] Notwithstanding the Court's decision to follow the *DeCoteau* approach, Plaintiffs attempt to relitigate the appropriate standard for the Court to apply, arguing that "[c]ourts have upheld similar allegations in cases involving complex systems." Plfs. Opp. at 7-8. In support, Plaintiffs cite many of the cases relied on in Plaintiffs' prior opposition brief to argue that alleging a defect, along with the effects, is sufficient. *Compare* D.E. 58-1 at 7, 8 n.2; Plfs. Opp. at 7-8. But the Court already considered this argument and determined that the approach set forth in *DeCoteau* is appropriate given the factual allegations in this matter. D.E. 72 at 8-9. The Court's conclusion is buttressed by the fact that, as discussed, Plaintiffs appear to contribute other components to the heating malfunction. At the same time, the Court can also envision circumstances in which the level of pleading required by *DeCoteau* is not necessary, for example, in a case in which *res ipsa loquitur* would apply.

The Court again finds that Plaintiffs fail to plausibly plead a defect even though the TAC is much closer to meeting the requisite pleading threshold. The TAC provides greater context about the role of the various components involved in the oven's heating system. *See, e.g.*, TAC ¶¶ 1, 120-130. For example, Plaintiffs explain that the oven's heat regulation system consists of the sensor, the control board, and the heat supply (which is an electric heating coil in an electric oven or an oven burner, gas valve, and ignitor in a gas oven). *Id.* ¶ 120. Plaintiffs explain that the sensor is responsible for measuring the internal oven temperature and communicating it to the control board by varying the amount of resistance in the conducting material (a metal wire that links the sensor to the control board). *Id.* ¶ 121. Plaintiffs continue that the amount of resistance affects the rate at which the electrical current flows into the control board, and that the control board then converts the electrical current into the voltage needed to power the control board's switching relays, which open and close the circuits that lead to the heating elements to signal to them when to turn on and off. *Id.* ¶¶ 122, 124-26. Plaintiffs add that "[a]ll of these elements must work correctly and in close coordination for an oven to properly heat and maintain the selected temperature," and that the Defect results from a "malfunction in the electrical interaction of the sensor and the control board." *Id.* ¶ 120.

As to the sensor-specific defect allegations, the TAC indicates the defective component—the sensor. The TAC also alleges how the sensor is defective. It states that the sensor "fails to correctly regulate resistance in the conducting material connected to the control board," which distorts the electrical current received by the control board. TAC ¶¶ 125-26.[9] And the TAC

---

[9] This allegation is stated similarly in other paragraphs of the TAC. *See, e.g.*, TAC ¶ 123 (alleging that the sensor is "unreliable and prone to erratic and incorrect regulation of resistance," which "causes an incorrect amount of current to flow to the control board.").

continues, as the SAC did, that this causes "circuit failure mode" in the control board, meaning that the control board is unable "to consistently open and close the [switching] relays," and thus "signal the heating supply to turn" on and off, *id.* ¶ 125, the cause of the defect.[10] Finally, the TAC indicates the result of the defect, that is, the heating temperatures are materially deficient—whether it be too low a temperature or one that is too high.

But Plaintiffs' other allegations cause the Court to question whether Plaintiffs allege that only the sensor is defective—as opposed to some other component or combination or components.[11] At times, Plaintiffs appear to allege that both the sensor and the control board are defective. *See, e.g.*, *id.* ¶ 118 ("Plaintiffs' Class Ranges fail to properly cook food on account of the defect in the Samsung oven temperature sensor bearing component model number DG32-00002B *and the Range's control board*. Each Class Range contains this sensor *and a control board*." (emphases added); *see also* Plfs. Opp. at 9 ("[T]he defect is present in both the temperature sensor and the Range's control board as it is the result of a malfunction in the electrical interaction between the sensor and the control board."). And at other times, the alleged defect is amorphous, "inher[ing] somewhere in the electrical and mechanical connections within the Range's heating system," and "distort[ing] the information received by the control board." TAC ¶ 1; *see also* Plfs. Opp. at 11 (explaining that the range's "failures result from a malfunction in the electrical connection between" the sensor and the control board). Plaintiffs' other allegations suggest that

---

[10] The TAC describes how the sensor is defective but does not indicate why it is. While the Court would have appreciated the why as well as the how, the Court does not find this omission to be fatal.

[11] The Court understands that to properly diagnose a defect in a range, counsel will most often have to employ an expert in the area. Armed with such expert insight, counsel may well conclude that more than one component of the range is defective and a contributing cause. However, this precision is lacking in the TAC.

9

the switching relays may be failing (and in turn, not communicating properly with the heat supply) not because of a sequence of upstream events involving the sensor and control board, but because the relays' contacts themselves have welded together or eroded. *See, e.g.*, TAC ¶ 125 n.5 ("[A] relay is said to have failed when its contacts fail to operate (often because they weld together) or when contact material erosion results in an unacceptable high path resistance."). Similarly, Plaintiffs assert that the Defect is "difficult" to diagnose because the "unreliable operation of the switching relays" results in "intermittent heating failures." Plfs. Opp. at 4, 7; *see also* TAC ¶ 127. This allegation is at odds with Plaintiffs' allegations that suggest that the ovens "consistently" fail to maintain a set temperature. TAC ¶¶ 24, 34, 39, 47, 58, 68, 81, 82.

The allegations further indicate that repair technicians continue to attribute the Defect, in whole or in part, to other components. For example, unnamed technicians, at unnamed times, have observed problems in the field with both "the sensors and control boards." *Id.* ¶ 131. As to the named Plaintiffs, technicians determined that the range's ignitors were the cause of the problem for Plaintiff Charles and Plaintiff Grimsley. TAC ¶¶ 26, 92. For Plaintiff Wesley, a technician first replaced the range's control board, and later, the temperature sensors. *Id.* ¶¶ 35, 38. And for Plaintiff Simpson, the range's control board was replaced twice. *Id.* ¶¶ 78-79. None of these repairs cured the problem. *Id.* ¶¶ 26, 35, 80, 92. The TAC also cites to a handful of online customer reviews that attribute the heating problem to other causes, further undermining Plaintiffs' allegations. *Id.* ¶ 136. According to one consumer, whose lower oven would only heat when the upper oven was also in use, the technician first replaced the "motherboard," but when this resulted in a different heating issue (the oven overheating), the technician concluded that the "sister board" needed to be replaced. *Id.* For another consumer whose oven was not reaching the set temperature,

the technician replaced the control board twice, the fan, and the thermostat, none of which resolved the problem. *Id.*

However, the TAC has addressed the technicians' competing views. Plaintiffs contend that the technicians are misdiagnosing the problem, therefore these allegations as to the technicians do not undercut the plausibility of Plaintiffs' claims. *See, e.g.,* TAC ¶ 129 ("[I]f the ignitor is not receiving a signal to ignite due to the circuit failure caused by the defective sensor, a technician may conclude that the ignitor itself is faulty rather than correcting attributing the problem to the control board's circuit failure that the defective sensor caused.").[12] The TAC clarifies that while technicians have attributed the Range's problems to different causes, Plaintiffs do not do so.

In sum, the TAC adds more detail to the alleged defective sensor and also makes clear that Plaintiffs are not adopting the technicians' diagnoses as their own. Yet, the TAC still falls short of plausibly pleading a defect in light of other specific allegations which appear to attribute the defect to other components.[13]

In the SAC Opinion, the Court stated that it was "the last time that the Court will grant Plaintiffs' leave to amend." D.E. 72 at 25. But because Plaintiffs' allegations have improved dramatically, the Court will provide one more opportunity to adequately plead a defect.

---

[12] Plaintiffs also allege that when technicians do replace the temperature sensor, this does not fix the problem because technicians use the same defective sensor as a replacement part. TAC ¶ 129 ("Even if a repair is performed, the Class Range remains substantially certain to fail because Samsung and its authorized technicians use the same defective DG32-00002B sensor as a replacement part, or replace the control board and leave the defective sensor in place.").

[13] Samsung also moves to dismiss Plaintiffs' express and implied warranty claims on additional grounds, and to dismiss certain claims for lack of standing, but because Plaintiffs have not adequately alleged a defect, the Court need not address these arguments. *See* Def. Br. at 15-25; Plfs. Opp. at 18-28; Def. Reply at 10-15.

## V. CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Plaintiffs have thirty (30) days to file another amended complaint, if it so chooses, consistent with this Opinion. If Plaintiffs fail to file a fourth amended complaint, the dismissal will be with prejudice. This is the last time that the Court will grant Plaintiffs' leave to amend. An appropriate Order accompanies this opinion.

Dated: May 17, 2023

_____
John Michael Vazquez, U.S.D.J.