UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHY WESLEY, ALESIA CHARLES, DANIELLE D'ANDREA, DAVID MARK EDMONDSON, NIKILYN GRIMSLEY, PAULA LIND, JO PEACOCK, and THERESA SIMPSON, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendant. | Civil Action No. 20-cv-18629 (JXN)(AME) <br><br> **OPINION** |

**NEALS**, District Judge

This matter comes before the Court by way of Defendant Samsung Electronics America Inc.'s ("Samsung" or "Defendant") motion to dismiss the Fourth Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 95.) Plaintiffs Kathy Wesley, Alesia Charles, Joseph D'Andrea, Jo Peacock, Paula Lind, Theresa Simpson, Nikilyn Grimsley, and David Edmondson (collectively "Plaintiffs") opposed the motion (ECF No. 96), and Defendant replied in further support (ECF No. 98). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully considered the submissions, and having heard the oral argument of the parties and for the reasons set forth below, Defendant's motion to dismiss Plaintiffs' Fourth Amended Complaint is **GRANTED in part** as to Plaintiffs Song-Beverly Act and Unfair Competition Law Claims (Counts III & IV), and **DENIED** as to the remaining claims.

I. **FACTUAL BACKGROUND**[1]

The Court writes primarily for the parties and assumes a familiarity with the facts of the case. A more detailed recounting of the facts can be found in prior Opinions in this matter, *see, e.g., Wesley v. Samsung Elecs. Am., Inc.*, No. CV 20-18629, 2023 WL 3496024, at *3 (D.N.J. May 17, 2023).

In this putative class action, Plaintiffs Kathy Wesley ("Wesley") (FL), Alesia Charles ("Charles") (CA), Joseph D'Andrea ("D'Andrea") (NJ)1, Jo Peacock ("Peacock") (FL), Paula Lind ("Lind") (IL), Theresa Simpson ("Simpson") (PA), Nikilyn Grimsley ("Grimsley") (VA), and David Edmondson ("Edmondson") (WA) allege that they purchased Samsung gas and electric ranges that include an oven temperature sensor bearing the component model number DG32-00002B (the "Class Ranges") from various authorized resellers, such as BestBuy, Sears, Wayfair, Lowes, and Home Depot. (Fourth Amended Complaint ("FAC.") ¶¶ 1, 20, 30, 43, 54, 64, 74, 87, 97, ECF No. 92.) Plaintiffs reviewed Samsung's marketing materials and learned that their ranges were covered by a Samsung warranty, which was included in the user manual that came with the range. (FAC ¶¶ 21-22, 31-32, 43-44, 55-56, 65-66, 75-76, 88-89, 98-99.) This warranty covers manufacturing defects in materials and workmanship for one year. (FAC ¶¶ 22, 32, 44, 56, 66, 76, 89, 99.)

After purchasing the ranges, Plaintiffs began to experience problems with the temperature settings of the ovens, as the ovens would not maintain the set temperature. (FAC ¶¶ 24, 34, 47, 58, 68, 78, 91, 101.) Each of their Range ovens would not maintain their set temperatures, deviating from the set temperature by up to 100 degrees. (FAC ¶¶ 25, 35, 48, 59, 69, 82, and 92.) Plaintiffs claim the Class Ranges suffer from a defect that distorts the electrical information received by the

---

[1] When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

2

Range's control board, which in turn causes the oven to deviate from the user-selected temperature (the "Defect"). (FAC ¶ 2.)

Plaintiffs contacted or attempted to contact Samsung to have the ranges repaired, but the repairs were either unsuccessful or Plaintiffs were unable to obtain repair services. (FAC ¶¶ 26, 36-37, 49, 60, 70, 79-81, 93, 103.) With the exception of Plaintiff Charles, who does not bring an express warranty claim, Plaintiffs' Ranges failed within the duration of their written warranties. (FAC ¶ 34, 47, 58, 68, 79, 91, 103.) Plaintiffs Wesley, Peacock, D'Andrea, Lind, Simpson, Grimsley, and Edmondson have since used replacement appliances. (FAC ¶¶ 40, 51, 61, 70, 84, 94, 104.)

Plaintiffs allege that at least 87 models of the Class Ranges fail to properly cook food because of the Defect. (FAC ¶¶ 119, 156.) According to Plaintiffs, expert testing and analysis show that the underlying cause of the Defect originates in the oven temperature sensor. (FAC ¶ 3.) Specifically, that the materials and workmanship of the DG32-00002B sensor are defective because the sensor fails to accurately regulate the amount of resistance in the conducting material connecting the sensor to the oven's control board. (*Id*.) As a result, the control board receives inaccurate electrical information and does not deliver the correct amount of voltage to the mechanical relay switch that regulates the oven's heating supply. (*Id*.) The defective sensor thus triggers a sequence of failures in the interconnected heating components that contribute to the heating failures Plaintiffs and other consumers have experienced. (*Id*.) Plaintiffs claim that the latent nature of the Defect, including the unreliable operation of the switching relays and the interactions among the components involved, can make the Defect difficult for repair technicians to diagnose. (FAC ¶ 139.) Plaintiffs further assert that even if a repair is performed, the Class Range remains substantially certain to fail because Samsung and its authorized technicians do not address the underlying cause of the Defect. (FAC ¶ 141.) Instead, they use the same defective

3

DG32-00002B sensor as a replacement part or replace the control board and leave the defective sensor in place, causing circuit failure to occur again on the new control board. (*Id*.) On other occasions, technicians incorrectly attribute the problem to a component of the heating system with which the control board communicates, such as the gas valve or ignitor, and consequently replace components that are not driving the failures. (*Id*.)

Plaintiffs further allege that Samsung knew of, and failed to disclose the Defect, and continues to manufacture and sell ranges with the defective sensor. (FAC ¶ 4, 145, 149, 150, 152, 155. Plaintiffs contend that had they known of the Defect, they would not have purchased their ranges or would have paid a significantly lower price. (FAC ¶ 158.)

## II. PROCEDURAL HISTORY

Plaintiffs initiated this action on December 9, 2020, and with Defendant's consent, amended their complaint on March 3, 2021, to add additional Plaintiffs. (ECF Nos. 1; 15.) Samsung then moved to dismiss, but did not challenge the defect allegations (ECF No. 16) and on December 3, 2021, the Court granted in part and denied in part Samsung's motion, upholding several of Plaintiffs' warranty claims while dismissing their fraud and consumer protection act claims. (ECF No. 44 at 10-11, 13,19.)

On June 15, 2021, in a Joint Discovery Plan, Samsung requested a stay of discovery pending resolution of the first motion to dismiss, and the request was denied. (ECF Nos. 20; 25.)

On April 5, 2022, Plaintiffs filed their Second Amended Complaint (ECF No. 52); Samsung moved to dismiss on May 16, 2022 (ECF No. 57); and Plaintiffs opposed and cross-moved for leave to file a Third Amended Complaint to add further Plaintiffs. (ECF No. 58.) On October 28, 2022, the Court granted Samsung's motion to dismiss with leave to amend and allowed the addition of new plaintiffs. (ECF No. 72.)

On April 29, 2022, Samsung requested to limit discovery to the named Plaintiffs (ECF No. 56), which the Court denied (ECF No. 66 at 9). Samsung again moved to stay discovery on November 16, 2022. (ECF No. 74.) On November 18, 2022, Plaintiffs sought an order compelling Samsung to produce its responses to Plaintiffs' outstanding discovery requests. (ECF No. 75.) This Court reserved decision on Plaintiffs' motion to compel on November 30, 2022, pending its decision on the motion to stay. (ECF No. 77.) On January 12, 2023, Samsung's motion to stay was granted. (ECF No. 86.)

Plaintiffs filed their Third Amended Complaint ("TAC") on November 28, 2022. (ECF No. 76.) On May 17, 2023, the Court dismissed the TAC, finding Plaintiffs did not plausibly plead a defect" but granted leave to amend because "the TAC is much closer to meeting the requisite pleading threshold" and "Plaintiffs' allegations have improved dramatically[.]" (ECF Nos. 85; 90 at 8, 11.)

On June 16, 2023, Plaintiffs filed their operative Fourth Amended Complaint ("FAC"). (ECF No. 92.) In the FAC, Plaintiffs assert claims for breach of express warranty on behalf of the New Jersey, Illinois, Florida, Pennsylvania, Virginia, and Washington subclasses (Count I); breach of the implied warranty of merchantability on behalf of the New Jersey, Florida, Pennsylvania, Virginia, and Washington subclasses (Count II); and violations of the Song-Beverly Consumer Warranty Act and California Consumers Legal Remedies Act on behalf of the California subclasses (Count III and Count IV, respectively). (FAC ¶¶ 175-216.)

On July 14, 2023, Defendant filed the instant motion to dismiss. (ECF No. 95.) Plaintiff filed a brief in opposition (ECF No. 96), and Defendant filed a reply in further support (ECF No. 98). This motion is now fully briefed and ripe for the Court to decide.

### III. LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions and, therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true[,]" and give the plaintiff the benefit of all reasonable inferences drawn therefrom. *Fowler*, 578 F.3d at 210. Even if plausibly pled, a complaint will not withstand a motion to dismiss if the alleged facts do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### IV. DISCUSSION

In their motion, Defendant argues that despite having several opportunities to do so, Plaintiffs have failed to allege a common, actionable defect. Defendant claims that Plaintiffs have also failed to allege facts showing any breach of warranty and have removed the only factual allegations supporting the two remaining California claims. Defendant also argues that Plaintiffs lack standing to assert claims about the range models they did not buy. As a result, Defendants

maintain that all of Plaintiffs' claims fail, and the FAC should be dismissed with prejudice. (*See generally* ECF No. 95.) The Court examines these arguments below.

### A. Standing

Defendant argues that Plaintiffs lack standing to bring claims related to all 88 ranges containing the temperature sensor at issue, though they claim to have bought just seven. Specifically, Defendants contend that Plaintiffs lack standing to assert claims as to the 81 range models they did not buy, none of which could have caused them an injury-in-fact. Thus, any claims regarding those 81 ranges must be dismissed for lack of standing. (ECF No. 95-1 at 30, 34.)

To establish standing, a plaintiff must establish three elements: (1) he or she "suffered an injury in fact, an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is a "causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable opt the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court"; and (3) "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000) ("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent, that the challenged action is causally connected to the actual or imminent injury, and that the injury may be redressed by the cause of action.").

Plaintiffs, for their part, do not dispute that none of the named plaintiffs in this action have ever purchased any of the 81 models listed in the FAC. (See FAC ¶ 156.) Generally, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendant, none may seek relief on behalf of himself or any other *member of the class.*" Hayes v. Wal–Mart Stores, Inc.*, 725 F.3d 349, 361 (3d Cir. 2013) (quoting *O'Shea v.*

7

*Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). However, the Third Circuit has held that a plaintiff who lacked standing to pursue a particular claim could still assert that claim in a putative class action because she had standing to pursue two closely related claims against the same defendant. *Haas v. Pittsburgh National Bank*, 526 F.2d 1083, 1088–89 (3d Cir. 1975); *see also Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice.").

Courts in this district are divided on the issue of whether plaintiffs have standing to pursue claims for products that they did not purchase. As outlined by the court in *Cox v. Chrysler Grp., LLC*, "some courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase. Other courts, following *Haas*, have refused to dismiss claims for products that the named plaintiffs did not buy themselves." No. CV 14-7573, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015) (collecting cases on both sides). Courts that have found dismissal at this stage on the basis of standing premature have generally assessed three elements: whether "the basis for the Plaintiffs' claims [are] the same, the products [are] closely related, and the defendants [are] the same." *Sauer v. Subaru of America, Inc.*, No. 18-14933, 2020 WL 1527779, at *3 (D.N.J. March 31, 2020) (quoting *In re Gerber Probiotic Sales Practices Litig.*, No. CIV.A. 12-835, 2014 WL 5092920, at *5 (D.N.J. Oct. 10, 2014)). Here, each of these requirements is met. First, the basis for the claims is the same: Samsung failed to fulfill its warranty responsibilities and remedy a common Defect. (See FAC ¶¶ 1-4, 117-42, 152-157.) Second, the Class Ranges are closely related because they share the same defective oven temperature sensor with the component model number DG32-00002B, which is allegedly responsible for the oven failures. (See FAC ¶¶ 1, 3, 119.) Third,

8

all of the Class Ranges are sold by Samsung. (FAC ¶¶ 156.) Because all three requirements are met, the Court will defer the resolution of Samsung's argument to class certification. *See Stewart*, 2012 WL 4168584, at *16; *Schechter*, 2019 WL 3416902, at *5; *Burbank v. BMW of N. Am., LLC*, 2022 WL 833608, at *3 (D.N.J. Mar. 21, 2022).

Having reviewed the competing case law, the Court agrees with those courts that have found dismissal for standing at this stage to be premature. Here, Plaintiffs' claims all have the same basis: the allegation that the defective oven temperature sensor with the component model number DG32-00002B is responsible for the Class Ranges' failures. "Under these circumstances, the Court refuses to dismiss Plaintiffs' claims as they relate to the ranges that named Plaintiffs have not purchased ... [and] defers the standing inquiry until the class certification stage." *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 873 (D.N.J. 2020) (quoting *Cox*, 2015 WL 5771400, at *15; *see also In re L'Oreal Wrinkle Cream Mktg. and Sales Practices Litig.,* No. 12-3571, 2013 WL 6450701, at *4 (D.N.J. Dec. 9, 2013).

### B.  Plaintiffs Have Alleged an Actionable Defect

To allege an actionable defect, Plaintiffs must plead "sufficient colorable information to plausibly establish" what defect exists. *See, e.g., See Jordan v. Samsung Electronics America, Inc.,* No. 2:22-CV-02828-MCAAME at *6 (D.N.J. August 15, 2023) ("Jordan"); *McQueen v. BMW of N. Am., LLC*, No. 12–6674, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013).

Preliminarily, the Court notes that the Honorable John M. Vazquez, U.S.D.J. (ret.) ("Judge Vazquez"), dismissed Plaintiff's TAC as a result of Plaintiff's failure to plausibly plead a defect. (ECF No. 90 at 8.) Specifically, Judge Vazquez concluded that certain allegations in the TAC "cause[d] the Court to question whether Plaintiffs allege that only the sensor is defective—as opposed to some other component or combination or components." (*Id.*) Nevertheless, Judge Vazquez acknowledged that the TAC was closer to meeting the requisite pleading threshold. (*Id.*)

9

In their motion, Defendants argue that Plaintiffs' FAC still fails to provide clarity as to what is defective about the sensor and has only added ambiguity by alleging testing on essentially every component *other than* the sensor. (ECF No. 95-1 at 3.) Defendants further contend that Plaintiff's expert analysis "has *no* 'testing or analysis' on the temperature sensor, and Plaintiffs still provide no facts showing 'what is actually defective about the temperature sensor[.]'" (*Id.*)

In rebuttal, Plaintiffs assert that the FAC supplies additional facts that include expert analysis of the Defect and its impact on the components in the Class Ranges' heating systems and clarifies that the underlying source of the Defect in the Class Ranges is the temperature sensor because it cannot accurately regulate the amount of resistance in the material connecting the sensor to the oven's control board. According to Plaintiffs, this has a cascading effect on the other interconnected heating system components. (ECF No. 96 at 7.) Plaintiffs argue the sufficiency of the additional expert testing and analysis allegations—together with clarifications as to the underlying cause of the Defect and removal of claims that could be read to attribute the defect to other causes. (*Id.*) As a result, Plaintiffs maintain that the FAC plausibly pleads a defect with a "level of specificity" in line with the complexity of an electrical range. (*Id.*) The Court agrees.

Here, the Court finds that the FAC has clearly alleged the temperature sensor as the source of the problems in the Class Ranges and explained how the sensor incorrectly regulates resistance, which leads to the oven's heating failures. (FAC ¶¶ 123-126.) Plaintiffs also allege how the defective sensor impacts the performance of the ovens' other heating components. Specifically, the TAC provides expert testing and analysis to show that the underlying cause of the Defect originates in the oven temperature sensor. (FAC ¶ 3.) The FAC states that because the sensor cannot accurately regulate the amount of resistance in the material connecting the sensor to the oven's control board, it has a cascading effect on the other interconnected components of the heating system because, absent accurate electrical information, the control board cannot deliver

the appropriate amount of voltage to the mechanical relay switches that regulate the heating supply. (FAC ¶¶ 3, 119, 127-138.) Further, in the FAC, Plaintiffs explained how the different components of the oven's heating system function and how they are connected (FAC ¶ 132-135, 137-138.) Additionally, Plaintiffs have also explained why technicians and consumers have sometimes erroneously attributed the temperature problems in the ovens to other causes. (FAC ¶ 139.) Accordingly, the Court finds that Plaintiffs have sufficiently alleged a defect in satisfaction of Rule 8. *See, e.g.*, *Weston v. Subaru of Am., Inc.*, 2022 WL 1718048, at *5 (D.N.J. May 26, 2022) (citing cases "denying relief under Rule 8 where class action plaintiffs identified (i) the vehicle part they believed defective; (ii) the source of the Defect; and (iii) examples of how the Defect manifests, and collecting cases holding same").

### C. Breach of Express Warranty Claims (Count I)

Plaintiffs assert a breach of express warranty claim on behalf of the New Jersey, Illinois, Florida, Pennsylvania, Virginia, and Washington subclasses. (FAC ¶¶ 175-185.) Samsung's express warranty applies to "manufacturing defects in materials or workmanship" for one year from the date of the original purchase. (*See* James L. Ryerson Certification ("Ryerson Cert.") ¶ 7; FAC ¶¶ 22, 32, 45, 56, 66, 76, 89, 99.) Plaintiffs contend that Samsung breached this warranty by failing to provide adequate repairs when Plaintiffs sought them following the manifestation of the defect. (FAC ¶ 180.) Samsung argues that this claim should be dismissed for two reasons: (1) Plaintiffs still have not alleged facts showing Samsung breached their warranties, and (2) Plaintiffs Lind and Simpson have not alleged facts showing reliance. (ECF No. 95-1 at 18.) The Court analyzes each argument below.

#### 1. Plaintiffs Have Allege Facts Showing Breach of Express Warranty

To state an express warranty claim, Plaintiffs must allege that Samsung failed to meet its warranty obligations *during* the warranty period. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d

505, 520 (D.N.J. 2008) ("[I]f the repair is sought outside the warranty period, it is not covered by the express warranty.").

Defendant argues that Plaintiffs Simpson, Peacock, D'Andrea, Grimsley, and Edmondson fail to allege facts showing a breach of warranty. Specifically, Defendants claim that Plaintiffs allege a failure to repair after the warranty expired or otherwise offer vague assertions, like that they were "unable to obtain repair service" (FAC ¶ 49), allegations too generic to show breach. (*See* ECF No. 95 at 4.)

      a. *Plaintiffs Simpson*

As to Plaintiff Simpson, the FAC provides that she bought her range in November 2016. (FAC ¶ 74.) In October 2017, Simpson's Class Range failed; the oven would not heat or properly cook food. (FAC ¶ 78.) Simpson contacted Samsung for repair on October 6, 2017. (FAC ¶ 79.) A technician "attempted a repair and replaced her Class Range's control board." (*Id.*) In September 2018, Simpson's oven again failed to heat. She contacted Samsung for repair on September 21, 2018. The technician again replaced the control board and charged Simpson $169.60 for the repair. (FAC ¶ 80.)

Defendants argue that by repairing the range for free in October 2017, during the warranty period, Samsung satisfied its warranty obligations, which "did not require Samsung to go beyond repairs allowing the [range] to function properly during the warranty" period. The Court disagrees. Plaintiffs sufficiently allege that Samsung did not "repair or replace" her range during the one-year express warranty period. "Whether [Samsung] met the terms of the express warranty by providing 'repairs,' but not actually fixing the alleged defects, cannot be determined at this motion to dismiss stage, where plaintiffs' claims must be accepted as true. *Kuzian v. Electrolux Home Prod., Inc.,* 937 F. Supp. 2d 599, 611 (D.N.J. 2013); *Simner v. LG Elecs. U.S.A., Inc.*, 2022 WL 3152707, at *8 (D.N.J. Aug. 8, 2022) (upholding breach of warranty claim where the manufacturer

performed one ineffective repair). Accordingly, Plaintiff Simpson may proceed with her breach of express warranty claim.

### b. Plaintiff Lind

Next, the FAC states that Lind purchased her range in November 2020. (FAC ¶ 64.) Shortly after purchase, in December 2020, Lind's Class Range failed, it would not maintain its set temperature by overheating by at least 25 degrees. (FAC ¶ 68-69.) After the Class Range failed, Lind's husband called Samsung in December 2020, approximately ten days after the Class Range's installation. (FAC ¶ 70.) A few days later, Samsung sent a technician to inspect the Class Range. (*Id.*) The technician stated that the range was correctly installed but did not identify a defect. Lind's oven continues to overheat. (*Id.*) In their opposition, Plaintiffs argue that Lind's allegation establishes a breach because she contacted Samsung and gave it a chance to repair her range, but Samsung failed to do so. (ECF No. 96 at 21.) The Court agrees that nothing more is required. *See Sanchez v. Kia Motors Am., Inc.*, 2021 WL 4816834, at *11 (C.D. Cal. Aug. 9, 2021) (upholding express warranty claim where the plaintiff provided the defendant's agent a chance to repair her vehicle but the dealership claimed her issue was not covered by the warranty); *cf. Razen v. FCA US LLC*, 2019 WL 7482214, at *5 (M.D. Fla. Oct. 23, 2019) (rejecting contention that the defendant's "service agents could avoid triggering the warranty obligations by refusing to properly diagnose or adequately repair the vehicle"). Accordingly, Plaintiff Lind may proceed with her breach of express warranty claim.

### c. Plaintiff Peacock

According to the FAC, Peacock's range was installed in December 2020, and she claims it failed immediately after that as the oven would not maintain its set temperature. (FAC ¶ 47.) She determined that her oven was underheating by approximately 100 degrees. (FAC ¶ 48.) After her Class Range failed, Peacock contacted Samsung on January 6, 2021, January 8, 2021, and January

11, 2021, but was unable to obtain repair service. (FAC ¶ 49.) Peacock alleges that about a month later, she contacted the individual who installed the Class Range, who confirmed the Class Range was installed correctly. (FAC ¶ 50.) Defendant argues that Peacock's generic allegation fails to show that Samsung did not honor its warranty obligations. (ECF No. 95-1 at 19.) Specifically, Defendant contends that Peacock does not allege she spoke with anyone at Samsung, let alone what the conversation entailed. (*Id*. at 19-20.) Further, Defendant contends that Peacock does not allege that Samsung refused to repair her range or offer another remedy under the warranty. She also fails to allege why she was "unable to obtain repair service." (*Id*. at 20.) Defendant argues that these vague allegations do not state a warranty claim. (*Id*.) While the Court agrees with Defendant that Plaintiffs' allegations regarding Peacock's attempt to contact Samsung for repairs are somewhat thin, the FAC has sufficiently alleged that Peacock contacted Samsung three times in January 2021, during the warranty period, but never received repair service. Under the applicable legal standard, Plaintiffs' allegations are sufficient to show a breach of warranty. *See, e.g.*, *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 420 (D.N.J.2016) (discussing elements of breach of warranty claim). Accordingly, Plaintiff Peacock may proceed with her breach of express warranty claim.

### d. Plaintiffs D'Andrea, Grimsley, and Edmonson

Next, Defendant argues that Plaintiffs D'Andrea, Grimsley, and Edmonson allege in conclusory fashion that they "contacted Samsung," which "declined to repair" their ranges, but they do not allege any other information. (ECF No. 95-1 at 20) (quoting FAC ¶¶ 58, 87. 91. 101.) The Court disagrees.

The FAC provides that D'Andrea purchased his range in February 2018. (FAC ¶ 57.) Within weeks of purchase, D'Andrea's Class Range failed. (FAC ¶ 58.) The oven would not maintain its set temperature, underheating by approximately 100 degrees. (FAC ¶ 59.) D'Andrea

contacted Samsung on December 14, 2018. Samsung declined to repair the Class Range. (FAC ¶ 60.)

Next, the FAC alleges that Gimsley purchased her range in June 2020. (FAC ¶ 87.) In March 2021, Grimsley's Class Range failed to maintain its set temperature, she determined that her oven was underheating by approximately 100 degrees. (FAC ¶¶ 91-92.) In March 2021, Grimsley contacted Samsung, which declined to repair her range. (FAC ¶ 93.)

Finally, the FAC states that Edmonson purchased his range in June 2018. (FAC ¶ 97.) Edmondson's Class Range failed shortly after installation as it would not maintain its set temperature. (FAC ¶ 101.) Despite Edmonson's attempts to recalibrate the oven, it continued to either underheat or overheat. (FAC ¶ 102.) Shortly after the failure, and within approximately one month of purchasing the Class Range, Edmondson contacted Samsung, which declined to repair the range. (FAC ¶ 103.)

Here, the Court finds that at this stage of the litigation, Plaintiffs' allegations regarding Plaintiffs D'Andrea, Grimsley, and Edmonson's warranty experiences sufficiently state breach of express warranty claims. *See, e.g.*, *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 420 (D.N.J. 2016) (discussing elements of breach of warranty claim). These warranty claims, which are not subject to a heightened pleading standard, are adequately pleaded by allegations that they have not been made whole despite offering Samsung a chance to remedy their issues and being left with an oven that cannot cook food. *See Bang v. BMW of N. Am., LLC*, 2016 WL 7042071, at *6 (D.N.J. Dec. 1, 2016) (whether defendant fulfilled its warranty responsibilities to either repair or replace defective parts could not be determined at the motion to dismiss stage). Accordingly, Plaintiffs D'Andrea, Grimsley, and Edmonson may proceed with their breach of express warranty claims.

2. <u>Plaintiffs Lind and Simpson Have Adequately Alleged Reliance</u>

Defendant argues that Plaintiffs Lind and Simpson should be dismissed as to the express warranty claim because they failed to plead reliance. Defendant contends that Plaintiffs Lind and Simpson do not allege facts showing they "were aware of the warranty terms and relied on those terms prior to purchasing their ranges," as required under Illinois and Pennsylvania law. (*See* ECF No. 95 at 24.) The Court disagrees.

Here, the FAC alleges that both Lind and Simpson "reviewed Samsung marketing materials, including in-store promotional materials, prior to [their] purchase" and were "aware prior to purchase that [their] Class Range [were] covered by a Samsung warranty." (FAC ¶¶ 66, 76.) Applying Illinois law, the Seventh Circuit has explained that cases requiring a showing of reliance are only "relevant to the question of whether an express warranty has been *created*. The 'basis of the bargain' rule does not apply to situations where the warranties are clear and express." *Wikoff v. Vanderveld*, 897 F.2d 232, 241 (7th Cir. 1990) (emphasis in original) (citing *Cont'l Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 90 n.2 (7th Cir. 1985)). Samsung provided a written warranty with Plaintiff Lind's Class Range, and because there is "no question that a warranty was, in fact, created," the basis of the bargain rule "is not applicable," and the relevant question is instead whether the warranty was breached. *Id.*; *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 833 (7th Cir. 2020) (holding that because the warranty at issue "was part of the parties' agreement" no further showing of reliance was required). Further, Pennsylvania law is in accord that no further showing of reliance is required for Simpson to state a claim. Consistent with the U.C.C., the Pennsylvania Supreme Court held that "[a] written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain. 13 Pa.C.S. § 2313(a)(1). This statement of law *is not qualified by whether the buyer has read the warranty clause and relied on it* in seeking its application." *Samuel-*

16

*Bassett v. Kia Motors Am., Inc.*, 613 Pa. 371, 412 (2011) (emphasis added). As such, a defendant "cannot avoid its contractual responsibilities . . . regardless of whether individual members read and fully understood the warranty provisions." *Id*.

### D. Implied Warranty Claims (Count II)

Plaintiffs assert a breach of the implied warranty of merchantability on behalf of the New Jersey, Florida, Pennsylvania, Virginia, and Washington subclasses (Count II). (FAC ¶¶ 186-195.) Defendant argues that Plaintiffs' implied warranty claims fail because (1) Plaintiffs' "sole and exclusive remedy" under the warranty agreement is a repair, replacement, or refund, and Plaintiffs fail to allege facts showing that Defendant breached any warranty, and (2) Plaintiff Edmondson's implied warranty claim fails because he lacks privity with Defendant as required by Washington law. (ECF No. 95-1 at 25.)

First, Defendant argues that the implied warranty claims fail for the same reasons their express warranty claims fail—i.e., any breach did not occur during the one-year warranty period. (ECF No. 95-1 at 25-26.) However, as noted above, the Court has already concluded that Plaintiffs adequately plead that Samsung breached their warranties during the warranty period. Accordingly, Samsung's first challenge to the implied warranty claims falls short.

Next, Defendant argues that Plaintiff Edmondson's implied warranty claim also fails because he allegedly bought his range from The Home Depot. (ECF No. 95-1 at 25-26.) Under Washington law, "[l]ack of contractual privity has historically been a defense to claims of a breach of warranty." *Brenner v. Vizio, Inc*., 2018 WL 4566054, at *3 (W.D. Wash. Sept. 24, 2018) (citing *Tex. Enters., Inc. v. Broadway Standard, Inc*., 66 P.3d 625, 627-28 (Wash. 1986)); *see also Baughn v. Honda Motor Co*., 107 Wash. 2d 127, 151 (1986). However, as Samsung acknowledges (ECF No. 95-1 at 27), Washington recognizes a third-party beneficiary exception to the privity requirement. *See Johnson v. Metro-Goldwyn-Mayer Studios Inc.*, No. C17-541 RSM, 2017 WL

3313963, at *6, 2017 U.S. Dist. LEXIS 122810 at *15 (W.D. Wash. Aug. 3, 2017) (citing *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 119 Wash.2d 334, 831 P.2d 724, 730 (1992) (en banc)).

In the FAC, Plaintiffs allege that "[s]hortly after the failure, and within approximately one month of purchasing the Class Range, Mr. Edmondson contacted Samsung, which declined to repair the range. (FAC ¶ 103) Further, Plaintiffs allege that they are the intended third-party beneficiaries of the contracts between Samsung and its resellers, who have no rights under Samsung's warranty agreements. (FAC ¶ 193.) The Court finds that deciding whether Edmondson is a third-party beneficiary under Washington law is not well-suited for resolution at the pleading stage. *See In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 750 (D.N.J. 2021) ("At this stage, the Court will not scrutinize whether Plaintiffs may establish a third party beneficiary status."). Therefore, Plaintiffs may pursue their implied warranty claims under a third-party beneficiary theory.

### E. The Song-Beverly Act and Unfair Competition Law Claims (Counts III & IV)

Plaintiffs assert violations of the Song-Beverly Consumer Warranty Act and California Consumers Legal Remedies Act on behalf of the California subclasses (Count III and Count IV, respectively). (FAC ¶¶ 196-216.) Defendant argues that Charles, the only California Plaintiff, whose oven worked without issue for more than three years—deleted the only allegation suggesting unmerchantability. (*See* ECF No. 95 at 28-29.) Specifically, Defendant argues that Charles bought her range in October 2017, and it fulfilled its purpose for more than three years. (Id. at 29-30; FAC ¶¶ 20, 24.) Then, in November 2020, the range allegedly "would not maintain its set temperature" and was "underheating by approximately 75 degrees." (*Id*. ¶¶ 24-25.) Charles does not allege that her range would not cook food, only that she was experiencing "exceedingly

18

long cooking times." (*Id.* ¶ 25.) Charles no longer alleges the underheating occurred "consistently," nor does she provide any other facts about how often her range supposedly underheated.

Charles' allegations in the FAC fall far short of showing that her range was "unfit for 'even the most basic degree of fitness for ordinary use,'" particularly when she continued to use her range "far past the express and implied warranty period." *Ocampo v. Apple Inc.*, 2022 WL 767614, at *6 (N.D. Cal. Mar. 14, 2022) (dismissing Song-Beverly implied warranty claim when plaintiffs used their laptops for two and three years). Further, Charles's Unfair Competition Law ("UCL") claim is based solely on "unlawful conduct," specifically that Samsung allegedly "violate[d] the Song-Beverly Consumer Warranty Act." (FAC ¶ 212.) Plaintiffs' UCL claim relies entirely on Song-Beverly to allege "unlawful conduct." The UCL claim fails with the Song-Beverly claim. Accordingly, the Court grants the motion in relevant part and dismisses Plaintiffs' Song-Beverly and UCL claims.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (ECF No. 95) is **GRANTED in part** as to Plaintiffs' Song-Beverly Act and Unfair Competition Law Claims (Counts III & IV) and **DENIED** as to the remaining claims. An appropriate Order accompanies this Opinion.

**DATED:** June 30, 2024

JULIEN XAVIER NEALS
United States District Judge